Argued March 18, affirmed June 3, 1953

## JACKMAN *v.* JONES ET AL.

258 P. 2d 133

See also 191 Or. 356, 229 P.2d 963.

*David M. Spiegel* argued the cause for appellant. On the briefs were Lenske, Spiegel, Spiegel, Martindale & Bloom, of Portland.

*David Fain* argued the cause for respondents. On the brief were Black, Kendall & Fain and H. Stewart Tremaine, of Portland.

Before LATOURETTE, Chief Justice, and LUSK, BRAND and PERRY, Justices.

LUSK, J.

Plaintiff has appealed from an adverse judgment in an action in tort to recover damages for injury to his truck and for loss of its use.

Trial was before the court on a stipulation of facts. The sole assignment of error is directed to the overruling of plaintiff's objections to the findings of fact and conclusion of law made by the court and the court's refusal to adopt other and different findings of fact and conclusions of law proposed by the plaintiff. The question thus raised is whether or not the plaintiff, by assigning a judgment which it obtained against one of the defendants, released its claim against the other two, the respondents here, all three being sued as joint tort-feasors. The court below held that such assignment had that effect, and entered judgment accordingly.

The facts are as follows: The plaintiff commenced his action by a complaint in which he sought a judg-

ment for damages to property and for personal injury against the defendants, Jones, K. F. Jacobson & Co. (hereinafter called Jacobson), and Taggart. Jones is not a party to this appeal. Jacobson and Taggart, who will be referred to as defendants, were engaged as joint adventurers in the construction of a state highway in Harney County. Jackman, the plaintiff, was in their employ hauling gravel for them in his own truck. Jones owned a truck, which, at the time of the accident out of which the controversy arises, was being driven by Charles Rex Heinicke, who was also in the employ of the defendants. The complaint charged that a collision between plaintiff's truck and that of Jones was caused by the negligent operation of Jones' truck by Heinicke, concurrently with the negligence of Jacobson and Taggart in failing to water the road on which the work was being done, as a result of which clouds of dust arose and obscured the vision of persons driving on the road.

Defendants and the Attorney General filed a "Supplemental Answer" under the statute § 102-1780, OCLA, alleging that plaintiff was an employee of the defendants, that both plaintiff and defendants were under the Workmen's Compensation Law, and that plaintiff's sole remedy for his personal injury was under the Workmen's Compensation Law. After a trial of that issue judgment was entered thereon in favor of the defendants, thus barring plaintiff's claim for damages for *personal injury* against them. Plaintiff thereafter amended his complaint so as to eliminate all references to the negligence of Jones, and charged the defendants with negligence in the operation of Jones' truck, causing $2,000.00 damage to the plaintiff's truck and $2,000.00 damage for loss of its use. The claim for personal injury against defendants was abandoned in the amended complaint.

In the meantime, however, Jones had defaulted and plaintiff had taken a judgment against him for $5,000.00 for personal injury, $1,765.25 general damages for injury to his truck, and $1,000.00 special damages for loss of use of his truck.

The case against the defendants came on for trial on the amended complaint. The facts above recited were stipulated, together with additional facts now to be stated. In effect, it was stipulated that plaintiff was an employee of the defendants in the road construction work in which they were engaged; that the other truck involved in the accident was owned by Jones and was being driven by Heinicke, an employee of defendants; and that the accident occurred while the drivers of both trucks were engaged in this common employment. Facts as to the manner of happening of the accident were stipulated from which an inference could be drawn that it was caused by the negligence of Heinicke in the operation of the Jones truck. It was further stipulated that after the default judgment was entered against Jones

"  *  *  *  plaintiff issued execution on said judgment and garnished the Standard Accident Insurance Company. The said Standard Accident Insurance Company had a contract of public liability insurance with the defendant Jones, which said policy had attached a P.U.C. endorsement requiring the Standard Accident Insurance Company to respond to any damages inflicted by Guy Jones, without respect to and regardless of his cooperation or lack of cooperation as assured with his insurance carrier. Said endorsement by this reference is made a part hereof. The said Guy A. Jones did not cooperate with his insurance carrier but under said endorsement, Standard Accident Insurance Company could not be relieved from responding to said default judgment upon the basis of said

lack of cooperation. Thereafter, Standard Accident Insurance Company, for the sum of $2,450.00, purchased the said default judgment rendered in favor of plaintiff against their assured, Guy Jones, and the plaintiff assigned the said default judgment to the Standard Accident Insurance Company, which assignment is of record and by this reference made a part hereof.

"Plaintiff, at the time of the damage to his vehicle, carried collision insurance with a $250.00 deductible clause, with the Anchor Casualty Company, a corporation. The said Anchor Casualty Company, has paid the sum of $1,464.74 for the repair of said vehicle. The said Anchor Casualty Company has assigned all of its right, title and interest in and by way of its subrogation rights to the plaintiff and the plaintiff is the holder thereof.

"The plaintiff contends that he is entitled to judgment against the instant defendants in the sum of $1,714.75 for damage to his vehicle and $721.00 for loss of use, being the sum stipulated, if any, are recoverable against the defendants at bar."

The P.U.C. endorsement, attached to the public liability policy of insurance issued by Standard Accident Insurance Company in favor of Jones and referred to in the stipulation, contains the following provisions respecting the liability of the company for the payment of any final judgment recovered against the insured for loss of or damage to property of others:

" * * * It is understood and agreed that upon failure of the company to pay any such final judgment recovered against the named insured, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment. The bankruptcy or insolvency of the named insured shall not relieve the company of any of its obligations hereunder."

"Nothing contained in the policy or any endorsement thereon, nor the violation of any of the

provisions of the policy or of any endorsement thereon by the named insured, shall relieve the company from liability hereunder or from the payment of any such final judgment * * * ."

The endorsement further provides:

"The named insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy, except for the agreement contained in this endorsement."

The assignment of judgment is of record and includes an attempted reservation of plaintiff's rights against the defendants in this language:

"Nothing herein contained shall affect any right or claim that I, Dwane Jackman, the plaintiff above named, have or may in the future obtain or seek to enforce against K. F. Jacobson & Co., an Oregon corporation, and J. R. Taggart, who are also defendants in the above entitled action but against whom no judgment has as yet been obtained, and I expressly reserve each and every right, claim or demand that I now have or may hereafter have by reason of any of the matters or things set forth in my complaint in the above entitled cause or otherwise against said K. F. Jacobson & Co., an Oregon corporation, and J. R. Taggart."

LUSK, J.

While other contentions have been presented in argument, the only question which we find it necessary to decide is whether the plaintiff, as the result of his assignment to Standard Accident Insurance Company of the judgment recovered by him against Jones, lost his right to proceed against Jacobson and Taggart in his action for damage to his truck and for loss of its

use. The precise question is whether the legal effect of that transaction is an extinguishment of the judgment and so a release of Jones, a joint tort-feasor with the defendants.

The rule that the release of one of two or more joint tort-feasors releases all prevails in this state. *Hicklin v. Anders* (decided February 18, 1953) 253 P2d 897; *Stires v. Sherwood*, 75 Or 108, 145 P 645. An assignment of a judgment to a judgment debtor or to a stranger for his benefit extinguishes the judgment, as the two antagonistic rights of creditor and debtor are thereby merged in one and the same person. *Brown v. Harding*, 170 NC 253, 86 SE 1010; *Owings v. Graham*, 120 SC 408, 113 SE 279; *Harvey v. Harvey*, 48 NYS2d 238, 183 Misc 475; 49 CJS 1037, Judgments, § 562; 2 Freeman on Judgments (5th ed) 2085, § 997; 30 Am Jur 892, Judgments, § 136. In 49 CJS 1026, Judgments, § 555, it is said:

"As a general rule, in the absence of a statute to the contrary, it is not competent for one of the joint defendants on paying the judgment to take an assignment of it to himself, or, unless under special circumstances, to a third person for his benefit, so as to wield it against his codefendant, and it is none the less extinguished by the payment, although such an assignment is made, unless, according to some authorities, the payment was not intended to have that effect."

*Lillie v. Dennert*, 232 Fed 104 (CCA 6th), decides that where one of two joint tort-feasors satisfied a judgment against both the judgment was discharged, though he induced a third person to pay the judgment for him and to take an assignment thereof. The court held that the evidence justified an inference that, though the money used to buy the judgment was the proceeds of a loan obtained from a bank in the name

of Lillie, the assignee of the judgment, actually the money was borrowed by Daggett, one of the judgment debtors, through the agency of Lillie, and that in substance and effect the judgment was bought by Daggett. As to this state of facts the court said:

"  *  *  *  If, however, the judgment was thus in fact bought by Daggett, one of the joint tort feasors and judgment debtors, this clearly operated as an entire discharge and satisfaction of the judgment, even although the purchase was ostensibly made by Lillie and the assignment taken in his name in the effort to keep the judgment alive as an obligation against Dennert."

See, also, 2 Black on Judgments, 1409, § 952.

If, in the instant case, the judgment had been assigned to Jones, the judgment debtor, it is clear under the authorities that the assignment would have operated as a release of Jones and as well of the defendants, jointly charged with him as tort-feasors. The defendants argue that Standard, Jones' insurance carrier, was in legal contemplation, with respect to this judgment, in precisely the same position as a joint tort-feasor. Plaintiffs answer that an insurance carrier is neither a joint tort-feasor with its insured nor jointly or severally liable upon a judgment obtained against the latter. They rely upon *Brune v. McDonald,* 158 Or 364, 75 P2d 10. That was an action for personal injuries brought under the motor vehicle "guest" statute. Pacific Indemnity Company had issued to the defendant a policy of public liability insurance and sought to intervene in the action. Its complaint in intervention charged that defendant had violated the terms of the policy by conspiring with the plaintiff to falsify the facts of the accident out of which the accident arose, and thereby "to mulct" the company in

damages, and asked that the cause be transferred to the equity side of the court and the policy be declared void as to that accident. We affirmed the ruling of the circuit court, which sustained a demurrer to the complaint in intervention. We held that the controversy could be completely determined without any reference to intervener's policy of insurance—that "an invalid, void policy of insurance could not in any way affect the issues tendered in plaintiff's complaint." Plaintiff relies particularly upon the following statements in the opinion:

"The generally accepted rule is that the right or interest which will authorize a third person to intervene must be of such a direct and immediate character that the intervener will either gain or lose by the direct legal operation of the judgment." (p. 370)

"It is obvious that the direct legal operation of the judgment in the case at bar would not cause intervener either to gain or lose anything." (p. 371)

The case has little if any bearing on the question before us. It did not involve the legal status of an insurance carrier with reference to a judgment which had already been recovered against its insured. The statements in the opinion above quoted were made in view of the allegations of the complaint in intervention, which, for the purposes of the demurrer, were taken to be true. The intervener alleged facts which, if established, would have avoided its liability to pay any judgment that the plaintiff might recover, and alleged that by reason of those facts the "policy of insurance is void as to the accident in which plaintiff was injured." If this were true, obviously "the direct legal obligation of the judgment" in *Brune v. McDonald* "would not cause intervener to either gain or lose anything". It is just as obvious that this could not be said

of the judgment against Standard in this case, for, both under the terms of its contract and the statute, § 101-145, OCLA, as amended by ch 171, Oregon Laws 1943, Standard was absolutely liable for the payment of the judgment against Jones within thirty days after its rendition. Notwithstanding any violation of the terms of the policy by Jones, the plaintiff's judgment against Jones was a fixed liability against Standard, and the company's only remedy was by action against Jones for reimbursement as provided in the endorsement on the policy.

There seems to be very little authority in the decided cases on the proposition put forward by defendants' counsel that an insurance company in a case like this occupies the same position as its insured. Perhaps, this is because the instances must be rare in which an insurance carrier, under a policy of public liability insurance and in circumstances similar to those here present, has conceived that it had anything to gain by buying a judgment against its own insured. No decision cited by counsel bears directly on the point, and our own research has discovered but two where it is discussed. One of these is *Fiorentino v. Adkins,* 9 NJ Misc 446, 154 A 429. In that case plaintiff recovered a judgment against Adkins and Farr & Bailey Manufacturing Company as joint tort-feasors. The Indemnity Insurance Company had insured Farr & Bailey against liability for the cause complained of. The insurance company paid plaintiff the amount of the verdict, received assignments of the judgment from both defendants, and issued execution on the assigned judgment against Adkins. Holding that the proceedings on the execution should be stayed, the court said:

"Adkins and Farr & Bailey Manufacturing Company were joint tort-feasors, and as between

them there was no right of contribution. Public Service Railway Co. v. Matteucci, 105 N. J. Law, 114, 143 A. 221. It is argued on behalf of the assignee of the judgment that it is a stranger to the record, and that the money paid by it was not paid in settlement of the judgment, but for the purchase of the judgment and for the specific purpose of keeping the same alive, particularly as against Adkins. The Indemnity Insurance Company, though not a party to the action, is nevertheless not a volunteer, nor, as the record now shows, is it a complete stranger to the action. In paying the amount of the judgment, it did not merely that which it chose to do but that which it was, by its contract obliged to do. That contractual obligation was in behalf of Farr & Bailey Manufacturing Company, and one of the incidents of the contract subrogated the Indemnity Company to the rights of Farr & Bailey. The Indemnity Company could not, if it would, enforce the judgment against its insured. It stands in its insured's shoes. There is a public policy behind the rule against contribution amongst joint tort-feasors, and we are unable to see the distinction, in the application of the rule, between a joint tort-feasor and one who, by contractual undertaking, stands in his place. The money paid by the Indemnity Company for the judgment was, in theory, the money of its insured. It was the accumulated premiums paid by the insured against the day when the latter would be called upon to suffer such a loss.

\* \* \* \* \*

"We conclude that payment by the Indemnity Company was, in effect, payment by its insured, Farr & Bailey Manufacturing Company, and resulted in such a situation as that the judgment could not be further enforced against that concern; and that, in its last analysis, the collection of a judgment from Adkins would be in the nature of a contribution by Adkins to his joint tort-feasor, inasmuch as a practice of that character would, of

course, have its reaction on insurance rates and charges, and thus inure to the benefit of the insured, a joint tort-feasor.''

The other case to which we have referred is *Adams v. White Bus Line,* 184 Cal 710, 195 P 389. Plaintiff obtained a judgment against White Bus Line and George P. Stiles, joint tort-feasors. White Bus Line's insurance carrier, Western Indemnity Company, paid the amount of the judgment to plaintiff, and the judgment was assigned to Powell, manager of White Bus Line. Stiles, the other defendant, applied to the court for an order directing the entry of satisfaction of the judgment on the ground that the payment by the insurance company to the plaintiff satisfied the judgment as to both defendants. White Bus Line appealed from an order directing entry of satisfaction. The judgment was affirmed. The court said:

"In considering this appeal the Western Indemnity company may as well be eliminated as a factor in the case. There was no privity or relation between it and the plaintiff or the defendant Stiles, and its payment to the plaintiff was no more than the act of the insured, the White Bus Line. The insurance company was not entitled to have the judgment kept alive, as it had no recourse against either of the defendants. The status of the parties is the same as if the White Bus Line had itself advanced the amount of the judgment and taken an assignment from plaintiff on its own initiative.

"It is apparent from the evidence that the money was paid on account of the White Bus Line, and the assignment was to its manager and for its benefit. It will hardly be claimed that any further recourse could be had under this judgment against the White Bus Line.

"The obvious purpose of the assignment was an attempt to keep the judgment alive against the codefendant, Stiles.''

The principle enunciated by these decisions—more particularly the Fiorentino case—that an insurance carrier stands in the shoes of its insured and that in the application of the rule which denies contribution between joint tort-feasors there is no distinction between a joint tort-feasor and "one who, by contractual undertaking, stands in his place" is, in our opinion, supported by logic and sound policy. Only two possible purposes could be served by keeping the judgment alive in the hands of the insurance company—one, to enforce contribution against a joint tort-feasor, the other to compel restitution to the carrier by its insured of payment by the former of a judgment, or a portion thereof, recovered against the insured. Neither purpose is in harmony with the policy of the law. The fact that in this case it appears by stipulation of the parties that Jones, the insured, violated the terms of the policy by failing to cooperate with the insurance company, does not alter the state of the case. Jones is not a party to the present proceeding, and has entered into no such stipulation so far as the record discloses. If it be the fact that Jones violated the terms of the policy, then Standard has a right of action against him for reimbursement of any payment made by it involving such breach, or for any payment that it would not have been obligated to make except for the agreement contained in the endorsement. But an insured, under this provision, has the right to require that an insurance company making such a claim establish it in a court of law. This right would be lost to the insured were the transaction under examination to be given judicial sanction. By the simple process of taking an assignment of the judgment the company could forestall any valid defense that the insured might have at law to a claim that he had violated the terms of the policy. Even though

the insured might obtain relief in equity against the enforcement of the judgment by the company, still the provision of the endorsement contemplates no such procedure, but rather, as we have indictated, that the company's right to reimbursement must be established by action for breach of contract in which the parties are entitled to trial by jury. It is elementary that the carrier, being primarily liable, had no right of subrogation to the right of the judgment creditor. 50 Am Jur 695, Subrogation, § 20. And see 2 Freeman on Judgments (5th ed) 2360, § 1133. Obviously, the agreement for reimbursement creates no such right.

■ Upon the argument suggestion was made from the bench that our recent decision in *Hicklin v. Anders,* supra, had relevance upon the present question. In that case we held that a judgment creditor might accept partial payment of his judgment from one of two joint-feasors and give a release which evidenced his intention to proceed against the other tort-feasor for the satisfaction of the balance of his claim without releasing such right. We based our decision upon what seems to be the modern and more enlightened view that the intention of the parties in transactions of that character should be given effect by the courts. We note here, what we overlooked in the preparation of the opinion in that case, that the principle of this decision has the support of the American Law Institute. See Restatement, Torts, § 885 (1) and historical note at p 461. As in the present case *Hicklin v. Anders* involved a satisfaction of a judgment against an insurance company for an amount less than the amount of the judgment against the defendants, together with an express provision that such satisfaction did not satisfy the judgment against the defendants, although it acknowledged receipt of the lesser sum from the insurance

company in partial satisfaction of the judgment. But there was no assignment of the judgment to the insurance company, and this is the point of distinction between the two cases. The law, it has been said, "gives to the acts of people the result which they intend, unless there is some legal reason forbidding it." *Lachner v. Myers,* 121 Wash 172, 174, 208 P 1095. The legal reasons which forbid keeping alive the plaintiff's judgment against Jones through the device of assigning it to Standard have been already adequately stated. Our conclusion is that the judgment has been extinguished, with the result that the plaintiff's claim against the defendants Jacobson and Taggart, alleged to be joint tort-feasors with Jones, has been released.

The judgment, therefore, will be affirmed.