Robert A. WRIGHT, Appellee,

v.

John L. HASKINS, Appellant.

No. 59398.

Supreme Court of Iowa.

Dec. 21, 1977.

John F. Davis, of Lindgren, Davis & Baker, Des Moines, for appellant.

Alfredo G. Parrish, Des Moines, for appellee.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON, and HARRIS, JJ.

MASON, Justice.

This is an appeal by John L. Haskins, defendant in a law action tried to the court, from an order overruling his motion for summary judgment and from an adverse final judgment on the merits. Plaintiff, Robert A. Wright, instituted an action in the Polk District Court seeking to enforce an assignment executed and delivered to him by Gertrude I. Hall of a judgment held by her against defendant.

In answer to plaintiff's original petition defendant denied each paragraph thereof and alleged that an accord and satisfaction executed by Mrs. Hall operated as both a satisfaction and release against him as well as Wright. Before trial defendant used the same argument in a motion for summary judgment.

The trial court overruled Haskins' motion because it found there was a question of fact to be determined " * * * herein as to whether or not it was the intent of the parties that payment to Mrs. Hall by Robert Wright released both judgments, whether or not Mrs. Hall received full satisfaction for the alleged wrong."

Before the court's ruling on Haskins' motion Wright amended his petition alleging Haskins should contribute his share of a judgment paid by Wright to Gertrude I. Hall which had been rendered on a verdict for Mrs. Hall in an action in which Wright and Haskins were sued as joint tortfeasors guilty of fraud. Haskins answered denying the allegations contained in the amendment.

Following trial the court concluded the assignment from Mrs. Hall to Wright was valid because the release of Wright was not intended to be also a release of Haskins. The court recognized the old common law

rule that contribution is not available between intentional tortfeasors but found the whole area of intentional torts had been greatly expanded in recent years. The court held under the facts of the case " * * * where there is no pronounced disparity in the severity of the duties of the two tortfeasors and the two are roughly in the same plane of moral guilt, the one who settled a judgment involving both is entitled to contribution against the other."

The court entered judgment against Haskins for $6,500 with interest at seven percent from June 1973 and for costs.

The factual background leading to the present lawsuit is narrated in *Hall v. Wright,* 261 Iowa 758, 156 N.W.2d 661 (Case I). In that action, commenced February 23, 1965, Wright and Haskins were sued for fraud by Mrs. Hall who has since died. September 18, 1961, Haskins had confessed judgment in favor of Gertrude Hall in the amount of $14,500 in another action pending in Polk District Court brought by Mrs. Hall against Haskins only.

In Case I the jury was asked whether the confession of judgment signed by John L. Haskins on September 15, 1961, entered as *Hall v. Haskins,* Law No. 76447 on September 18, 1961, in favor of Gertrude I. Hall, was the same cause of action as that which Mrs. Hall claimed against Robert A. Wright. On October 27, 1965, the jury returned its verdict against Robert A. Wright for $10,000 compensatory damages and $15,000 punitive damages. The jury also answered, yes, that Mr. Haskins' confession of judgment for $14,500 was the same cause of action and, therefore, awarded no judgment against Mr. Haskins.

In Case I no judgment was entered against Haskins. However, judgment was entered against Wright for $17,400 and this court affirmed the judgment.

After this court affirmed the judgment in Case I, Wright negotiated a settlement with Mrs. Hall. He paid Mrs. Hall $14,000 of which $13,000 was toward her judgment against him and $1000 was for her assign-

ment to him of the $14,500 judgment she had by confession against Haskins in 1961. In return Mrs. Hall executed an instrument entitled Accord and Satisfaction in which she stated her acceptance of the $14,000 was in complete satisfaction of the judgment she held against Wright and in release of all future claims against him.

Wright then instituted the case presently before us.

This appeal presents the following questions for review:

1. Is a party entitled to contribution from a joint tortfeasor where the element of intent of the intentional tort of which they have been found guilty is implied by law?

2. Should a tortfeasor be allowed to avoid the effect of the rule forbidding contribution between joint intentional tortfeasors by institution of suit to enforce an unsatisfied judgment against his joint tortfeasor where such judgment arose out of the incident in which they jointly, intentionally and tortiously injured a third party?

3. Did the trial court err in its conclusion the Accord and Satisfaction did not release defendant?

I. Defendant contends the trial court erred in finding plaintiff was entitled to contribution where he and plaintiff were guilty of an intentional tort, fraud.

■ Defendant asserts no contribution or indemnity is allowed in this state where there has been a showing of intentional wrong, or of moral turpitude or of concerted action by the tortfeasors. Defendant admits, however, contribution has been allowed where the unintentional negligence of two or more parties concurs to injure a third party. We agree. See *Best v. Yerkes,* 247 Iowa 800, 77 N.W.2d 23, 60 A.L.R.2d 1354; *Hawkeye-Security Ins. Co. v. Lowe Constr. Co.,* 251 Iowa 27, 99 N.W.2d 421; *National Farmers Union Etc. Co. v. Nelson,* 260 Iowa 163, 147 N.W.2d 839; and *Dairyland Insurance Company v. Mumert,* 212 N.W.2d 436 (Iowa 1973).

■ Plaintiff contends there is ample authority to support an extension of the right of contribution to cases where intent, scienter or knowledge is presumed, implied or proved by circumstantial evidence. He cites us to numerous cases from other jurisdictions which he contends extend the right of contribution to incidents of intentional tort. In the majority of these cases such extension is provided for by statute. In the remainder of the cases the statements of extension are merely dictum. We do not find these citations persuasive.

According to plaintiff there is a difference between the effect of an intentional tort in which the proof of intent is indirect rather than direct. This contention is untenable. The implication of intent from the circumstances and acts of the tortfeasor does not make the wrong to the third person less intentional than it is when intent is established by direct proof. A person is as guilty of fraud, an intentional wrong, whether the elements of intent, scienter or knowledge are presumed, implied or proved by circumstantial evidence or are proved by direct evidence. The harm to the third person is just as pernicious in either case.

Plaintiff argues where two tortfeasors are equally guilty the doctrine of contribution which developed in equity should be applied to effect a fair and equitable result. To do otherwise, plaintiff argues, would be to penalize the one who settled the judgment in good faith, while allowing the other to go scot-free. Plaintiff argues this would be an inequitable result which should not be tolerated. This argument and its counterpoise are discussed in a case cited to us by plaintiff, *Judson v. Peoples Bank & Trust Company of Westfield,* 17 N.J. 67, 110 A.2d 24.

In *Judson,* 110 A.2d at 34, Justice Brennan of the United States Supreme Court, then a justice of the New Jersey Court, stated both arguments as follows:

"The relief in equity was not available, however, 'as between conscious, willful, malicious or intentional wrongdoers or tortfeasors who are *in pari delicto,'* * * * [citing authority]. This was upon the

ground that society's interest in the deterring of intentional wrongdoing would be better served if wrongdoers were taught that they 'must not expect that a judicial tribunal will degrade itself by an exertion of its powers by shifting the loss from one to the other; or to equalize the benefits or burdens which may have resulted by the violation of every principle of morals and of laws.' * * * [citing authorities]. The soundness of this reasoning was strongly questioned by those who found difficulty in finding either logic or common sense in a rule which, if it deters the paying tortfeasor from further wrongdoing, encourages those who go scott free to repeat the offense, although equally or perhaps even more morally culpable. These critics urged that the wholesome social objectives of the rule would be 'best procured by making certain that none of the tortfeasors will go entirely free.' * * * [citing authority]; in other words, that if each intentional wrongdoer knew that his conduct was exposing him to the risk of the certainty of liability in some amount, the desired deterrent effect would be produced more surely than if contribution among the wrongdoers is denied."

While we adhere to the first view expressed in *Judson* (see *Best v. Yerkes,* 247 Iowa at 807, 77 N.W.2d at 27–28), we see logic and soundness in the second view. However, we do not believe the present case presents appropriate factual circumstances to expand the right of contribution as it stands today in this state. This means we will not aid Wright, the intentional tortfeasor, in the factual situation presented here. In this connection see Restatement, Second, Torts, section 886A(3), Tentative Draft No. 16, April 24, 1970, cited in *Wassel v. Eglowsky,* 399 F.Supp. 1330, 1366–1367 (D.C.) affirmed, 542 F.2d 1235 (4 Cir. 1976). The trial court erred when it found plaintiff entitled to contribution.

II. Defendant contends the trial court erred in finding the assignment of the 1961 confessed judgment valid. He argues an assignment obtained by one joint tortfeasor from the creditor holding a judgment against his co-tortfeasor is legally invalid and unenforceable. He argues the payment

of the $14,000 by Wright extinguished the debt against him. This argument is based on the general rule " * * * that the assignment of a judgment to or for the benefit of the judgment debtor satisfies the judgment, for the reason that two antagonistic rights of creditor and debtor merge in one and the same person." 46 Am.Jur.2d, Judgments, section 891, p. 1028.

Plaintiff argues the assignment did not extinguish the debt because of the following statements from 47 Am.Jur.2d, Judgments, section 996, pp. 92–93:

"There are cases, however, in which an assignment of or an agreement to transfer or keep alive the judgment is held to preclude the payment from operating as a discharge of the judgment. * * * Similarly, where contribution or exoneration may be had among codebtors, those of them who lift the common judgment liability and take an assignment of the judgment are entitled to use it as an aid in enforcing contribution or exoneration. This may also be true where the assignment is taken in the name of a third person for the benefit of a paying debtor. Moreover, even though one of several debtors may not himself enforce contribution, if a third person pays the judgment and takes an assignment thereof he is entitled to enforce it against the other debtors, where he does not pay the judgment with the money of the first debtor and is not acting as his agent or attorney."

The part of the rule relied upon by plaintiff applies only where the judgment debtor is entitled to contribution. In view of our determination that plaintiff is not entitled to contribution, the rule relied upon by plaintiff does not apply here.

■ The general rule relied upon by defendant applies where there is but one judgment debt and the judgment debtor (or one who by contract or otherwise stands in his shoes) pays that debt and takes an assignment. This is done in an attempt to keep the judgment alive so that it can be enforced against another by the equitable doctrine of subrogation or by the suretyship doctrine of exoneration. This procedure

has not met with success in the courts. See for example *Jackman v. Jones*, 198 Or. 564, 258 P.2d 133 and the citations therein.

This general rule is also not applicable here. Here we have two judgments arising out of the same incident. Both parties have been adjudged jointly liable for the harm caused by their perpetration of the fraud in this incident. One has paid for the harm while the other has not. The paying tortfeasor now seeks to enforce a judgment against the non-paying tortfeasor where such judgment arises out of the same incident for which they are jointly liable. This is not a situation in which the general rule upon which defendant relies applies.

Defendant argued the following rule was also applicable here:

"The satisfaction of one of two separate judgments obtained on the same demand or cause of action against different obligors discharges both. Thus, although separate judgments may be rendered against joint tortfeasors, there can be but one satisfaction. The general rule is that judgments against joint tortfeasors are deemed satisfied by satisfaction of a judgment against one of the joint tortfeasors.

"This rule has been applied even where the judgments differed in amount and the acceptance was under a stipulation that it should not be considered as a release against the other." 47 Am.Jur.2d, Judgments, section 994, p. 90.

This rule is that adhered to in 2 Freeman on Judgments, (Fifth Ed.), section 1126, pp. 2344–2345, where it is stated:

"Where two judgments have been obtained for the same cause of action or debt, the payment or satisfaction of one operates as a satisfaction of the other, except as to costs. * * * The judgments may be for different amounts, but because they are founded upon the same cause of action, the satisfaction of one, whether complete or partial, operates to the same extent as a satisfaction of the other. Payment of the smaller will satisfy the larger judgment both as to principal and interest, notwithstanding an attempt to avoid this result by agreement between the creditor and the debtor in the judgment paid. * * *."

The basis of this rule is explained in 2 Freeman, section 1133 at 2360, where it is stated:

" * * * In the case of judgment debtors who were joint tortfeasors, there is ordinarily no right of contribution between them and a payment by one satisfies the judgment, even though he may at the same time have had an assignment executed to a third person."

While it appears we could rely upon this rule to provide an adequate legal basis for a decision of the issue before us, we find two reasons why we decline to do so. First, the rule is based on a proposition we disavowed in *Best v. Yerkes,* supra. Second, if we base our decision on this rule we would, in some instances, deny full and fair relief to an injured party.

As was previously explained, the *Best v. Yerkes* rule is contribution between joint tortfeasors is allowed where their negligence concurs to produce injury to a third person. The rule upon which defendant wishes us to rely is the counterpart of the proposition no contribution is ever allowed between joint tortfeasors. Both rules are discussed in Restatement, Second, Judgments, section 95, Comment a, p. 81, Tentative Draft No. 3, April 15, 1976, where it is stated:

"The traditional rule regarding satisfaction or discharge of a judgment against one of several co-obligors was that it discharged all other persons liable for the loss in question. Accordingly, a satisfaction or discharge of a judgment debtor also discharged others liable under the same judgment, liable for the same harm under separate judgments, or against whom a claim of liability might be asserted in a subsequent action. The rule applicable to judgments was a counterpart of the rules applicable to co-obligors whose obligations had not been reduced to judgment. The latter rules were that a release of one tortfeasor released all others liable for the same harm, and that a release of one 'joint' or 'joint and several' promisor released other such promisors."

In our view a rule which is the counterpart of a rule which we have disavowed should not provide the basis for our decision here. There is a second reason why we will not base our decision on the rule on which defendant relies.

If we were to base our decision on this rule full and fair relief in some instances would be denied an injured third party. Such party would be thus denied the opportunity to seek partial satisfaction of one judgment against one of the tortfeasors and complete and final satisfaction by execution of the other judgment against the other tortfeasor. In this connection see Restatement, Second, Judgments, section 95, p. 80, Tentative Draft No. 3, April 15, 1976, where it is stated:

"When a judgment has been rendered against one of several persons each of whom is liable for a loss claimed in the action on which the judgment is based:

"(1) A satisfaction or release of the judgment, or covenant not to execute upon it, or other agreement terminating in whole or in part the judgment debtor's obligation, does not discharge the liability of any of the other persons liable for the loss, except:

"(a) To the extent that the agreement may so provide; and

"(b) To the extent required by the law of suretyship.

"(2) Any consideration received by the judgment creditor in payment of the judgment debtor's obligation discharges, to the extent of the amount of value received, the liability to the judgment creditor of all other persons liable for the loss." See also Comments a through c to this section.

Acceptance of this position will not mean the judgment creditor can collect more than the highest judgment he has been awarded. It merely means he can enforce more than one judgment so as to collect the full amount of the highest judgment. Subsection (2) prevents more than full recovery by providing the payment from the first judgment debtor sued discharges, to the extent of the amount of value received, the liability to the judgment creditor of all other persons liable for such loss.

The soundness of this approach is perceived when compared to the more modern approach to releases of tortfeasors. Many states have adopted the position a release to one tortfeasor does not release other tortfeasors unless the release so provides or such is the intent of the parties thereto. This position is similar to our position by which we find such documents, unless clearly to the contrary, a covenant not to sue. In support see *Pedersen v. Bring,* 254 Iowa 288, 291–295, 117 N.W.2d 509, 511–513; *Johnson v. Harnisch,* 259 Iowa 1090, 1094–1099, 147 N.W.2d 11, 14–17; *Stetzel v. Dickenson,* 174 N.W.2d 438, 440 (Iowa 1970); *Community S. D. of Postville v. Gordon N. Peterson, Inc.,* 176 N.W.2d 169, 175 (Iowa 1970); *Moose v. Rich,* 253 N.W.2d 565, 568–569 (Iowa 1977); Annot., 73 A.L.R.2d 403, 425. See also Restatement, Second, Judgments, section 95, subsection (1)(a), Tentative Draft No. 3, April 15, 1976, set out above.

In line with the more liberal approach adopted by this court in regard to releases we perceive no reason why this court should not take such a position as to judgments. This approach finds support in Restatement, Second, Judgments, section 95, Comment a, p. 81, Tentative Draft No. 3, April 15, 1976, wherein it is stated:

"The traditional rules regarding discharge of co-obligors have now been superseded by the rule that an agreement terminating the obligation of one such co-obligor has no effect on the liability of another of them unless the agreement has provisions to that effect. * * * [citing authorities]. An obligation represented by a judgment is simply a formalized counterpart of the claim on which it is based. The effect of discharging a judgment should therefore be the same as the effect of discharging less formal obligations. The modern authorities so hold."

■ In our opinion the proposition that a judgment creditor can sue successively different judgment debtors until full satisfaction of the highest judgment is attained is the proper rule to be applied to injured

third parties and their rights. This position has the support of the Restatement, Second, Judgments, section 95, Comment f, p. 85, Tentative Draft No. 3, April 15, 1976, where it is said: "The rule of this Section governs the obligations of the co-obligors in favor of the injured person and the effects of an obligor's payment on the injured person's right to collect on his judgment. It does not deal with two related problems, which are beyond the scope of this Restatement." As expressly stated, the rule does not apply to all instances of contribution and indemnity.

In addition to the two related problems referred to in this comment where the rule of this section does not govern it is our opinion that another instance in which the rule does not apply is presented by the factual circumstances in the record before us where an intentional tortfeasor has taken an assignment from a judgment creditor and then seeks to enforce the judgment assigned against a fellow intentional tortfeasor.

In division I hereof reference was made to Restatement, Second, Torts, section 886A(3), Tentative Draft No. 16, April 24, 1970. In this subsection it is stated:

"(3) There is no right of contribution in favor of any tortfeasor who has intentionally or recklessly caused the harm."

At pages 202–203 of the Tentative Draft are these comments:

"*i. Intentional and reckless tortfeasors.* In the absence of statute, the courts have adhered to the original English rule that no right of contribution arises in favor of one who has intentionally caused harm to another. The basis of the rule is the old one, that the courts will not aid one who has deliberately done harm, so that no man can be permitted to found a cause of action on his own intentional tort. This rule has been modified, however, to permit contribution in favor of one who is charged with a purely technical tort, without any real intent to do harm, as in the case of one who has intentionally entered the land of another, and so become liable for trespass, in the innocent belief that the land is his own. On the same basis, one who has become liable for conversion by reason of his bona fide purchase of stolen goods may be allowed contribution.

"It is not enough for the application of the rule stated in Subsection (3) that the tortfeasor seeking contribution has intentionally violated a statute, as by driving at a speed in excess of the statutory limit, or parking next to a fireplug, if his conduct is not intended to do harm to anyone.

"*j.* The same rule has been applied to conduct which is not intended to do harm, but is reckless, or as it is sometimes called, 'wilful' or 'wanton.' (See § 500). Such conduct usually approaches the degree of moral blame attached to intentional harm, since the defendant deliberately inflicts a highly unreasonable risk of harm upon others in conscious disregard of it. Here again, however, the principles of equity are to be taken into account; and if, for example, the automobile guest statute of a particular state has been interpreted in such a manner that 'wilful' or 'wanton' misconduct under its provisions has become no more than a high degree of ordinary negligence, without the mental element of the deliberate and conscious, it does not follow that contribution is necessarily to be denied in the particular case."

In our view the trial court applied an erroneous rule of law in determining that the assignment from Mrs. Hall to Wright was valid. This error requires reversal.

III. Defendant contends the trial court erred in concluding the Accord and Satisfaction executed by Mrs. Hall did not release him.

In view of our determination in divisions I and II hereof that Wright, an intentional tortfeasor, was not entitled to contribution under the factual situation presented here, we need not consider this contention.

The trial court erred in finding plaintiff was entitled to contribution under the record here.

The case is therefore

Reversed.