NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

IDA MOORHEAD CORPORATION; SNAPS HOLDING COMPANY,
*Appellants*,

*v.*

JAMES LEACH,
*Appellee*.

No. 1 CA-CV 15-0166
FILED 11-10-2016

Appeal from the Superior Court in Maricopa County
No. CV 2014-000470
The Honorable Michael L. Barth, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Brown & Associates, PLLC, Chandler
By David L. Brown, Richard N. Crenshaw
*Counsel for Appellants*

Freeman Law, PLLC, Scottsdale
By Shelton L. Freeman
*Counsel for Appellee*

---

## MEMORANDUM DECISION

Judge Margaret H. Downie delivered the decision of the Court, in which Presiding Judge Patricia K. Norris and Judge Samuel A. Thumma joined.

---

**D O W N I E**, Judge:

**¶1**        IDA Moorhead Corporation ("IDA") and SNAPS Holding Company ("SNAPS") appeal a judgment by the superior court preventing enforcement of a North Dakota judgment in Arizona against James Leach. For the following reasons, we affirm.

### FACTS AND PROCEDURAL HISTORY

**¶2**        IDA terminated Reed Danuser's employment in 2010. Danuser filed a wrongful termination lawsuit in North Dakota against IDA, Leach (IDA's former president), and others. While that action was pending, SNAPS entered into a Stock Purchase Agreement ("Agreement") with IDA and others whereby SNAPS purchased all of IDA's stock. The Agreement included the following language:

> **Reed Danuser Litigation.** Buyer is aware of the pending Reed Danuser litigation, and has had an opportunity to review the Company's records and litigation documents with regard to the pending action, and subject to the indemnity provisions as hereinafter set forth, the Buyer agrees to indemnify and pay all expenses and judgments associated with said lawsuit.[1]

---

[1]        The indemnity clause of the Agreement stated:

> **Indemnification.** Buyer shall hold and indemnify Sellers harmless from the claims of Reed Danuser up to the sum of $100,000.00. In the event the amount necessary to resolve the issues with Reed Danuser exceed $100,000.00 the Seller shall be responsible for that portion. In the event the amount is less than $100,000.00, the difference shall be paid to the Sellers.

¶3            Danuser obtained a judgment against IDA and Leach in the wrongful termination action ("Judgment"). The Judgment included an award against IDA and Leach, jointly and severally, in the sum of $692,671.78 and included an additional award against IDA only for $130,727.99. Danuser was also awarded pre- and post-judgment interest and taxable costs.

¶4            After unsuccessful attempts to collect on the Judgment, Danuser filed suit in North Dakota against SNAPS, IDA, and Sanjay Patel — SNAPS's CEO, sole shareholder, president, vice president, secretary, treasurer, and chairman. Among other things, Danuser alleged that IDA had fraudulently transferred all of its assets to SNAPS to prevent him from collecting on the Judgment.

¶5            In January 2014, the parties to the fraudulent conveyance action settled. Their settlement agreement acknowledged that Danuser had partially collected on the Judgment but that approximately $660,000 remained owing. IDA, SNAPS, and Patel agreed to pay Danuser $450,000 in installments. In exchange, Danuser assigned the Judgment to them. Danuser also agreed to domesticate the Judgment in Arizona "in order that the Assignee may pursue said [J]udgment against James Leach" — an Arizona resident.

¶6            Danuser recorded the Judgment in the Maricopa County Superior Court. Leach sought to stay domestication and execution of the Judgment on various grounds. After extensive briefing, the superior court ruled that IDA could not enforce the Judgment against Leach because IDA and Leach were joint tortfeasors who had committed an intentional tort against Danuser and, under Arizona and North Dakota law, "a right to contribution does not exist in favor of any tortfeasor who is found by the trier of fact to have committed an intentional tort." The parties thereafter litigated whether SNAPS could enforce the Judgment or whether, as Leach contended, enforcement was barred because SNAPS was the alter ego of IDA.

¶7            After denying Leach's motion for summary judgment on the alter ego issue, the superior court held a bench trial. The court thereafter ruled that SNAPS "was the alter ego of IDA at all material times." As a result, SNAPS was precluded from enforcing the Judgment against Leach.

¶8            Appellants timely appealed. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -2101(A)(1).

3

## DISCUSSION

### I.     Contribution

¶9        Appellants challenge the superior court's determination that, as joint tortfeasors who committed an intentional tort against Danuser, they cannot enforce the Judgment against Leach.  The parties have not briefed whether Arizona or North Dakota contribution law applies, but as the superior court concluded, and as we explain *infra*, the outcome is the same under either state's law.

¶10        According to Appellants, the superior court erred in determining that Arizona's version of the Uniform Contribution Among Tortfeasors Act ("UCATA"), A.R.S. §§ 12-2501 to -2509, bars enforcement of the Judgment against Leach.  Although Arizona has abolished joint and several liability in most types of cases, "A.R.S. § 12-2501(A) permits a contribution claim based on an out-of-state joint and several liability judgment."  *Bill Alexander Ford, Lincoln Mercury, Inc. v. Casa Ford, Inc.*, 187 Ariz. 616, 619 (App. 1996).  However, "[t]here is no right of contribution in favor of any tortfeasor who the trier of fact finds has intentionally . . . caused or contributed to the injury."  A.R.S. § 12-2501(C).

¶11        In addressing the contribution issue in the superior court, Appellants conceded "the North Dakota Court found the defendants jointly and severally liable for the wrongful discharge of Danuser which is an intentional tort."  Arizona law prohibits intentional tortfeasors from obtaining contribution from joint tortfeasors.  *See* A.R.S. § 12-2501(C); *see also Bishop v. Pecanic*, 193 Ariz. 524, 528, ¶ 14 (App. 1998) ("UCATA did not grant the intentional tortfeasor the right of contribution.").  The law is the same in North Dakota.  *See* N.D. Cent. Code Ann. § 32-38-01(3) ("There is no right of contribution in favor of any tort-feasor who has intentionally . . . caused or contributed to the injury.").

¶12        Appellants did not argue in the superior court that, as assignees, they may enforce the Judgment against Leach irrespective of UCATA's prohibition.  On the contrary, Appellants urged application of UCATA principles.[2]  We decline to address Appellants' new argument,

---

2        Appellants argued that: (1) under North Dakota law (citing a statute addressing joint obligors on a contract), contribution between co-defendants is permissible; and (2) UCATA supports "the position of SNAPS and IDA that Leach remains liable for any remaining balance on

raised for the first time on appeal, that they should prevail irrespective of UCATA. *See In re MH 2008-002659*, 224 Ariz. 25, 27, ¶ 9 (App. 2010) (The court of appeals does not "consider arguments raised for the first time on appeal except under exceptional circumstances."). Moreover, Appellants offer no authority for the proposition that an assignment may be used to circumvent the statutory prohibition against contribution. Indeed, Appellants rely on *Wright v. Haskins*, 260 N.W.2d 536 (Iowa 1977) — albeit for a different proposition — despite *Wright*'s holding that a joint tortfeasor may not, through an assignment from the original plaintiff, "seek[] to enforce the judgment assigned against a fellow intentional tortfeasor." *Id*. at 542.

¶13 Additionally, Appellants' reliance on the "single recovery rule" undermines their new argument that the general law of assignments should apply. The single recovery rule is a UCATA-based principle that "mandates a deduction for sums paid by co-tortfeasors to settle a same-injury tort claim." *Bishop*, 193 Ariz. at 527, ¶ 9. The rule's purpose is to prevent a plaintiff from receiving "a double recovery." *Id*. at 529, ¶ 19. The single recovery rule addresses the relationship *between the tortfeasors and the plaintiff*; contribution, on the other hand, "is concerned with the rights of co-tortfeasors *inter sese*" (between or among themselves). *Id*. at 527, ¶ 12. At issue here are the rights of "co-tortfeasors" as among themselves.

¶14 The superior court did not err by concluding that IDA could not enforce the Judgment against Leach.

## II. Alter Ego

¶15 After a bench trial, the superior court ruled that SNAPS was the alter ego of IDA. The legal effect of this determination was that

the judgment not satisfied by IDA." At oral argument before this Court, Appellants identified one sentence in a supplemental response filed in the superior court stating that "SNAPS now stands in the shoes of Danuser pursuant to the assignment of the [J]udgment." This brief reference, without citation to legal authority or accompanying substantive argument, did not preserve the issue for this Court's review. *Cf. Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985) (Appellate courts should not permit "fleeting references to preserve questions on appeal.").

SNAPS could not enforce the Judgment against Leach for the same reason IDA could not enforce it.

**¶16**         As Appellants acknowledge, we view the evidence in the light most favorable to sustaining the superior court's decision. *See Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51–52, ¶¶ 11–12 (App. 2009). We will not set aside that court's factual findings "unless they are clearly erroneous or unsupported by any credible evidence." *Federoff v. Pioneer Title & Tr. Co. of Ariz.*, 166 Ariz. 383, 388 (1990). Appellate courts do not reweigh the evidence presented in the trial court. *Brown v. U.S. Fid. & Guar. Co.*, 194 Ariz. 85, 92, ¶ 36 (App. 1998).

**¶17**         The proponent of an alter ego theory must prove unity of control and also establish that observation of the corporate form "would sanction a fraud or promote injustice." *Gatecliff v. Great Republic Life Ins. Co.*, 170 Ariz. 34, 37 (1991). Factors demonstrating unity of control include:

> [S]tock ownership by the parent; common officers or directors; financing of subsidiary by the parent; payment of salaries and other expenses of subsidiary by the parent; failure of subsidiary to maintain formalities of separate corporate existence; similarity of logo; and plaintiff's lack of knowledge of subsidiary's separate corporate existence.

*Id*.

**¶18**         The superior court found unity of control between IDA and SNAPS based on evidence that:

- SNAPS is IDA's sole shareholder;

- The Boards of Directors of IDA and SNAPS are the same, consisting of Patel and his brothers;

- SNAPS pledged IDA's assets to a SNAPS lender;

- Patel acted on behalf of SNAPS "to thwart Danuser's efforts to collect on his judgment against IDA," including asking one of IDA's largest customers "to re-enter/issue invoices in [SNAPS's] name instead of IDA's name;"

- Employees at IDA's facility are directly employed and paid by SNAPS;

- SNAPS made the payment on IDA's behalf to secure assignment of the Danuser judgment;

- SNAPS "collected IDA's accounts receivables and deposited them in a bank account established and controlled by" SNAPS; and

- SNAPS operates IDA as SNAPS d/b/a IDA.

¶19    Substantial evidence supports the superior court's findings, which establish the requisite unity of control. Although Appellants suggest the court should have reached a different conclusion based on other factors urged at trial, the superior court found Leach's evidence "more credible and persuasive than the evidence presented by [SNAPS]."[3] *See State v. Gallagher*, 169 Ariz. 202, 203 (App. 1991) (appellate courts affords great weight to a trial court's assessment of credibility).

¶20    Regarding the second prong of the alter ego analysis — whether observing the corporate form would sanction a fraud or promote an injustice — the superior court ruled:

> Observance of separate corporate existences of IDA and [SNAPS] instead of disregarding corporate form and treating IDA and [SNAPS] as the same corporation (IDA), would allow IDA to, in essence, domesticate and execute on the foreign judgment, through its alter ego, [SNAPS], which it would, otherwise, be precluded from doing by the laws of Arizona and North Dakota. . . . Observing corporate form, would allow IDA to obtain contribution, in the form of an assignment, from its co-intentional joint tortfeasor (Leach).

The superior court did not err in making this finding. The Arizona Legislature has decreed that intentional tortfeasors may not obtain

---

[3]    At oral argument before this Court, Appellants argued that the superior court adopted all of Leach's proposed findings of fact without considering or addressing SNAPS's evidence. The record does not support this assertion. The superior court's detailed ruling neither parrots Leach's proposed findings nor ignores SNAPS's evidence. On the contrary, the court explains that Leach's evidence was more credible in various respects and that SNAPS failed to present persuasive evidence supporting its unity of control argument.

contribution from joint tortfeasors. A.R.S. § 12-2501(C). Circumvention of this pronouncement through a common law exception would work an injustice in a broad sense because it would violate established Arizona public policy.

¶21        The superior court also considered the injustice prong as it relates to Leach personally, stating:

> [E]ven if the second prong can only be satisfied by demonstrating that observance of the corporate form would promote an injustice to the party seeking relief under the alter ego theory, then this court finds that Leach has also met his burden of proof. Although this court finds that Leach failed to sufficiently explain the mechanism by which observance of the corporate form would allow [SNAPS] to avoid paying Leach the remainder of the purchase price purportedly due under the Stock Purchase Agreement, this court agrees with Leach's argument that allowing [SNAPS] to assert IDA's separate existence to avoid the consequences of its decision to purchase and take an assignment of the Judgment from Danuser would promote an injustice to Leach.

The superior court could reasonably make this finding based on the evidence before it. *See Ize Nantan Bagowa, Ltd. v. Scalia*, 118 Ariz. 439, 443 (App. 1978) (Proponent of alter ego theory must "show by a preponderance of the evidence that the financial setup of the corporation is only a sham and causes injustice."). By statute, Leach is protected against a contribution claim by IDA. A reasonable trier of fact could conclude it would be unjust to permit SNAPS — an entity "exercising substantially total control over IDA" in an attempt to avoid the Judgment through "financial maneuvering" — to vitiate Leach's statutory protection. *See Keg Rests. Ariz., Inc. v. Jones*, 240 Ariz. 64, 75, ¶ 38 (App. 2016) ("A fraud or injustice arises if observance of the corporate form would confuse the opposing parties and frustrate their efforts to protect their rights, while allowing the party responsible to evade liability.").

¶22        We affirm the superior court's alter ego determination, which precludes SNAPS from enforcing the Judgment against Leach.

## III.    Motion for Reconsideration

¶23        More than five months after the superior court ruled that IDA was a joint tortfeasor who had committed an intentional tort against

Danuser, Appellants filed a motion for reconsideration pursuant to Arizona Rule of Civil Procedure 7.1(e), seeking to overturn that determination. Appellants argued for the first time that, in the wrongful termination action, the North Dakota court "issued a Memorandum Opinion and Order of Judgment" that was sent to all parties, but that Appellants' counsel in the domestication action "did not have a copy of" when the superior court made its ruling. Appellants argued their earlier admission that IDA and Leach committed an intentional tort against Danuser was "based upon SNAPS and IDA's counsel reading of the North Dakota Court's final order in this case."

**¶24** The superior court denied Appellants' motion for reconsideration. We review that decision for an abuse of discretion. *Tilley v. Delci*, 220 Ariz. 233, 238, ¶ 16 (App. 2009).

**¶25** A motion for reconsideration under Rule 7.1(e) is not appropriate for raising new arguments or evidence. *See, e.g.*, *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 57 n.2, ¶ 17 (App. 2007). And even if we were to liberally construe Appellants' Rule 7.1(e) motion as a request for relief under Rule 59(a)(4) (newly discovered evidence), the superior court did not abuse its discretion.

**¶26** To obtain relief based on newly discovered evidence, the movant must, among other things, demonstrate that the evidence "could not have been discovered before trial by the exercise of due diligence." *Waltner v. JPMorgan Chase Bank, N.A.*, 231 Ariz. 484, 490, ¶ 24 (App. 2013). Appellants made no such showing.

**¶27** The North Dakota ruling was issued in October 2012 — almost two years before the superior court ruled that IDA was a joint tortfeasor who had committed an intentional tort against Danuser. Appellants repeatedly cited the Judgment in their superior court briefing, and the Judgment expressly referred to "the Memorandum Opinion and Order for Judgment dated October 11, 2012." Moreover, attached to Appellants' motion for reconsideration is the "Memorandum Opinion and Order for Judgment," preceded by a letter from IDA's counsel to IDA specifically referencing the Opinion and Order. Under these circumstances, the superior court did not abuse its discretion by denying Appellants' motion for reconsideration.

## IV. Supersedeas Bond

**¶28** Appellants challenge the superior court's refusal to require Leach to post a supersedeas bond. Rulings on supersedeas bonds are

appropriate for special action review. *See City Ctr. Exec. Plaza, LLC v. Jantzen*, 237 Ariz. 37 (App. 2015). And the bond issue is moot, as we have affirmed the judgment in favor of Leach.

## CONCLUSION

**¶29** For the foregoing reasons, we affirm the judgment of the superior court. Leach is entitled to recover his taxable costs on appeal upon compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED:  AA