827 P.2d 462

**Stephen J. SHELBY, Plaintiff/Appellant,**

v.

**ACTION SCAFFOLDING, INC.,**
**Defendant/Appellee.**

**No. CV–90–0102–PR.**

Supreme Court of Arizona,
En Banc.

Feb. 20, 1992.

John D. Kaufmann, Tucson, for plaintiff/appellant.

Chandler, Tullar, Udall & Redhair by Christopher J. Smith, John W. McDonald, Tucson, for defendant/appellee.

## OPINION

CORCORAN, Justice.

This case requires us to construe various provisions of Arizona's Uniform Contribution Among Tortfeasors Act (UCATA), A.R.S. §§ 12–2501 to –2509. Defendant Action Scaffolding, Inc. seeks review of the court of appeals' opinion holding that the amount a plaintiff receives in settlement from a joint tortfeasor is to be deducted from the plaintiff's damages as determined by the jury before reducing those damages in proportion to the plaintiff's relative degree of fault. *Shelby v. Action Scaffolding, Inc.*, 164 Ariz. 302, 792 P.2d 765 (App. 1990); *see* A.R.S. §§ 12–2504, –2505(A). Action claims that the plaintiff's damages should be reduced in proportion to the plaintiff's fault before deducting the settlement amount from the then-reduced damages.

In his cross petition, plaintiff Stephen J. Shelby seeks review of the court of appeals' holding that the amount a plaintiff receives in settlement from a joint tortfeasor who is sued solely on a strict liability theory is to be deducted from the plaintiff's damages. *See* A.R.S. § 12–2504. Shelby claims that the whole reduction scheme of § 12–2504 is inapplicable when a plaintiff settles with a joint tortfeasor who has been sued solely on a strict liability theory.

Because this case presents multiple issues of first impression, and because UCATA's significance continues to increase as more and more cases alleging multiple theories of liability against multiple defendants are both filed and defended, we granted review.[1] *See* rule 23, Arizona Rules of Civil Appellate Procedure. We

have jurisdiction under Ariz. Const. art. 6, § 5(3), and A.R.S. § 12–120.24.

*Factual and Procedural Background*

On November 5, 1986, Shelby fell approximately 20 feet from a scaffold while hanging drywall at a job site in Pima County. As a result of the fall, Shelby sustained serious and permanent injuries.

Action erected the scaffold for Shelby's employer, Johnson Plastering Company, Inc. General Scaffolding, Inc., a defendant in the trial court, previously sold the scaffolding to Action.

In 1987, Shelby filed a two-count complaint against Action and General. Count One was based on a negligence theory and named Action but not General. Count Two was based on a strict products liability theory and named General but not Action.[2]

The case went to trial in March 1989. After all of the parties had presented their evidence, General informed the court that it had entered into a settlement and release agreement with Shelby that provided for a payment of $250,000 to Shelby. The trial court found that the agreement had been entered into in good faith and dismissed General and all products liability claims from the lawsuit. After General was dismissed, Shelby and Action made their closing arguments on the remaining negligence claim.

In its verdict, the jury found that "[Shelby] was totally damaged in the amount of $650,000." The jury also found that "[Action] was liable for 30% of the injury and [Shelby] was liable for 70% of the injury." Neither Shelby nor Action requested the jury to apportion fault to General.

Based on the jury's verdict, the trial court awarded judgment for Action. The trial court also awarded Action its costs as the prevailing party. The trial court based

---

**1.** After granting review in this case, the parties in *Soltis v. Comet Builders* (CV–91–0009–T/AP) and *Hermosillo v. Dempsey* (CV–91–0049–T/AP) petitioned this court to transfer and consolidate their cases with *Shelby* because all 3 cases involve similar facts and questions of law. Pursuant to rule 19, Rules of Civil Appellate Procedure, we granted the petitions for transfer and

consolidation. We have disposed of *Soltis* and *Hermosillo* in separate memorandum decisions.

**2.** Later, Shelby filed an amended complaint which added various defendants to Count Two. None of these defendants is relevant to our review.

its judgment on the following formula, which it believed UCATA establishes:

| | |
|---|---:|
| Shelby's total damages | $650,000 |
| Reduced in proportion to Shelby's relative degree of fault (70% × $650,000) | <$455,000> |
| Equals Shelby's claim against Action | $195,000 |
| Reduced by settlement amount | <$250,000> |
| Equals damages due from Action | $ 0 |

---

On appeal, a 2–to–1 court of appeals opinion vacated the trial court's judgment and remanded the case for entry of judgment in favor of Shelby in the amount of $120,000. The court of appeals also vacated the trial court's order awarding costs to Action and remanded with instructions to award costs to Shelby. The court of appeals majority based its decision on the following formula, which it believed UCATA establishes:

| | |
|---|---:|
| Shelby's total damages | $650,000 |
| Reduced by settlement amount | <$250,000> |
| Equals Shelby's after-settlement damages | $400,000 |
| Reduced in proportion to Shelby's relative degree of fault (70% × $400,000) | <$280,000> |
| Equals damages due from Action | $120,000 |

---

The difference between the court of appeals' formula, which deducts the settlement amount from Shelby's damages before reducing those damages in proportion to Shelby's fault (the "Settlement–First Formula"), and the trial court's formula, which reduces Shelby's damages in proportion to his fault before deducting the settlement amount from the then-reduced damages (the "Fault–First Formula"), is significant. Based on our analysis in part A, below, we believe that the court of appeals properly applied the Settlement–First Formula to the facts of this case. Further, based on our analysis in part B, below, we believe that the reduction scheme of A.R.S. § 12–2504 applies in this case, even though Shelby sued General solely on a strict liability theory.

*Discussion*

A. *Should § 12–2504's or § 12–2505's Reduction Scheme be Applied First?*

This case requires us to decide whether the reduction scheme found in § 12–2504 or the one found in § 12–2505 should be applied first. Section 12–2504 provides in relevant part:

> If a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the same injury ... [i]t does not discharge any of the other tortfeasors from liability for the injury ... but *it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant or in the amount of the consideration paid for it, whichever is greater.*

(Emphasis added.) If we apply § 12–2504 and reduce Shelby's claim by the settle-

ment amount first, we will have effectively adopted the Settlement–First Formula.

On the other hand, if we apply § 12–2505 and reduce Shelby's damages in proportion to his fault first, we will have effectively adopted the Fault–First Formula. Section 12–2505 provides in relevant part:

> The defense of contributory negligence ... is in all cases a question of fact and shall at all times be left to the jury. If the jury applies [the contributory negligence] defense, the claimant's action is not barred, but *the full damages shall be reduced in proportion to the relative degree of the claimant's fault* which is a proximate cause of the injury....

(Emphasis added.)

In determining which of the two reduction schemes the Arizona legislature intended should be applied first, we normally would look to the text of each statute and construe it according to the general rules of construction established by the legislature. *See* A.R.S. §§ 1–211 to –218 (general rules of statutory construction). We believe, however, that when it adopted §§ 12–2504 and –2505, the legislature did not contemplate which of the two reduction schemes should be applied first. Therefore, any attempt to determine which of the two reduction schemes the legislature intended should be applied first would be futile.

1. The Legislature Did Not Contemplate Whether § 12–2504's or § 12–2505's Reduction Scheme Should Be Applied First

Our belief that the legislature did not contemplate which of the two reduction schemes should be applied first is supported by the fact that neither § 12–2504 nor § 12–2505 expressly provides which of the two reduction schemes should be applied first or how the amount of judgment

is to be calculated in cases in which both statutes apply. On the other hand, the 1987 amended version of A.R.S. § 12–2506, although not applicable in this case, expressly provides how the amount of judgment is to be calculated in cases in which it applies. A.R.S. § 12–2506(A) ("To determine the amount of judgment to be entered against each defendant, the trier of fact shall multiply the total amount of damages recoverable by the plaintiff by the percentage of each defendant's fault, and that amount is the maximum recoverable against the defendant.").

We believe that § 12–2506 illustrates that when it contemplates difficulty in applying its statutes, the legislature knows how to and does provide express guidance for such application. Because no such guidance is provided by either § 12–2504 or § 12–2505, we believe that we can reasonably conclude that the legislature did not contemplate which of the two reduction schemes should be applied first.

Further, we note that § 12–2504 was taken virtually verbatim from § 4 of the 1955 Revised Uniform Contribution Among Tortfeasors Act, and § 4 of the 1955 Revised Act was taken materially unchanged from § 4 of the original Uniform Contribution Among Tortfeasors Act, which was approved by the National Conference of Commissioners on Uniform State Laws and the American Bar Association in 1939 (the Original Act).[3] This history is significant because when the Original Act was approved in 1939, comparative negligence was practically nonexistent. *See* H. Woods, *Comparative Fault* § 1:11, at 24–27 (2d ed. 1987) (as of 1939, only 3 states—Mississippi, Georgia, and Wisconsin—had adopted comparative negligence principles). We believe that because § 12–2504 is materially the same as § 4 of the Original Act, and § 4's reduction scheme almost certain-

---

**3.** Section 4 of the Original Act provided as follows:

§ **4. Release; Effect on Injured Person's Claim.**—A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides; *but reduces the claim against the other tortfeasors*

*in the amount of the consideration paid for the release, or in any amount or proportion by which the release provides that the total claim shall be reduced, if greater than the consideration paid.*

Unif. Contribution Among Tortfeasors Act § 4, 9 U.L.A. 242 (1957) (emphasis added).

ly did not contemplate any interaction with comparative negligence principles, we are safe in concluding that our legislature adopted § 12–2504 without contemplating whether its reduction scheme or § 12–2505's reduction scheme should be applied first.

Having concluded that the Arizona legislature did not contemplate which of the two reduction schemes should be applied first, we decide this case as we decided *Dietz v. General Elec. Co.,* 169 Ariz. 505, 821 P.2d 166 (1991). In *Dietz* we faced a situation similar to the one we face here: two statutory provisions calling for different court action and neither explaining how that action should be taken. In resolving the dilemma in *Dietz* we stated:

> When the text of a statute is capable of more than one construction or result, legislative intent on the specific issue is unascertainable, and more than one interpretation is plausible, *we ordinarily interpret the statute in such a way as to achieve the general legislative goals that can be adduced from the body of legislation in question.*

*Dietz,* 169 Ariz. at 510, 821 P.2d at 171 (emphasis added).

2. The General Legislative Goals Underlying § 12–2504 and § 12–2505

In determining the general legislative goals underlying UCATA's adoption, we borrow from an article written by Scot Butler, III and G. David Gage entitled *Comparative Negligence & Uniform Contribution: New Arizona Law,* 20 Ariz.B.J. June–July 1984, at 16 [hereinafter Butler & Gage].

> In 1979, House Bill 2247 was introduced. This bill dealt solely with contribution and would have adopted the Uniform Contribution Among Joint Tortfeasors Act, as revised in 1955 (the Uniform Act). In 1982, Senate Bill 1011 was introduced.... However, the Uniform Act was substituted for the original bill in the Senate along with the language of § 12–2501(H), and the House added provisions similar to §§ 12–2502 (pro rata shares based on degrees of fault), 12–2503(F) (trier of fact to determine degrees of fault) and 12–2505(A) (pure comparative negligence). The comparative negligence amendment was deleted by a Conference Committee, and the Governor then vetoed the bill.

Butler & Gage, at 16. In his veto message, the Governor stated:

> When Senate Bill 1011 emerged from the House of Representatives after original consideration, it represented a thoughtful response to Arizona's tort law problems. It adopted the doctrine of comparative negligence, providing that a plaintiff's negligence simply serves to reduce his recovery in proportion to his fault, rather than totally barring any recompense. And, for the defendant, the bill provided for contribution by all parties at fault, again in proportion to their relative culpability. In short, as adopted by the House, this bill restored balance to both the plaintiff's and defendant's side of personal injury law.
>
> Inexplicably, the Conference Committee stripped the comparative negligence language from the bill, leaving only the provisions dealing for contribution among joint tortfeasors. In my view, it is anomalous to limit a defendant's liability to his actual proportion of fault, while at the same time retaining a doctrine which bars a plaintiff's recovery in the event of *any* fault, no matter how slight. By solving one problem without addressing the other, this bill imbalances the tort system and makes unlikely a future attempt at complete reform.

Laws 1982, pp. 1276–77 (emphasis in original).

> After the governor vetoed Senate Bill 1011, the legislature reconsidered the issue.
>
> In 1983, similar legislative activity, including the addition of pure comparative negligence provisions, occurred on Senate Bill 1016 and House Bill 2271, but neither bill received final approval due to a stalemate between the competing interests. Then, in 1984, the Senate passed Senate Bill 1058 in a form that essentially included §§ 12–2501 through 12–2505(A). In the House Judiciary Com-

mittee, an attempt to adopt a modified uniform comparative fault act as House Bill 2236 was rejected, and the committee adopted provisions identical to Senate Bill 1058. The House then amended Senate Bill 1058 to include §§ 12–2505(B) through 12–2509.... This version of the bill passed both houses and was signed by the Governor.

Butler & Gage, at 16.

■ We believe that Messrs. Butler and Gage properly concluded that UCATA's legislative history indicates that the general legislative goals for UCATA include both "increas[ing] the fairness of the tort system for both plaintiffs and defendants" and "promot[ing] settlement of complex and multiparty tort litigation." *See* Butler & Gage, at 16, 17. To achieve these goals, we recognize, as the title of the Butler and Gage article implies, that UCATA is divided into two types of provisions: comparative negligence provisions and uniform contribution provisions. We believe that the comparative negligence provisions were adopted primarily to increase fairness, while the uniform contribution provisions were adopted primarily to promote settlement.

### a. *Fairness*

■ We believe that the Settlement–First Formula meets the general legislative fairness goal better than the Fault–First Formula in at least two respects. First, the Settlement–First Formula allows the plaintiff who has negotiated a favorable settlement, rather than the non-settling defendant, to benefit from that settlement. In this case, for example, Shelby negotiated a $250,000 settlement, which is quite favorable given the fact that the jury found that Shelby himself caused all but $195,000 of his damages.[4] We think Shelby, not Action, should benefit from his favorable settlement. The Settlement–First Formula allows Shelby to do so by allowing him to recover a portion of the damages caused to him by Action in addition to the settlement amount.

If we applied the Fault–First Formula, on the other hand, Action, not Shelby, would benefit from Shelby's favorable settlement. This is because Action would escape liability entirely merely because Shelby had recovered from General an amount that exceeded the damages Action caused Shelby. We do not believe that this is the result the legislature intended.

■ Second, the Fault–First Formula is unfair because it may allow, as in this case, a joint tortfeasor to escape liability entirely (and recover costs) simply because its victim negotiated a favorable settlement with another defendant. Here, for example, the jury determined that Action was liable for 30% of Shelby's total damages of $650,000, or $195,000. If we were to apply the Fault–First Formula, Action would escape liability entirely, even though the jury found that it caused Shelby $195,000 in damages. To us, this result epitomizes unfairness.

Finally, we believe that by adopting the Settlement–First Formula and holding Action liable for at least a portion of the damages it caused, we will be sending the message negligence law was established to send: if you negligently injure someone, you will be held liable; therefore, exercise reasonable care. *See, e.g., Prosser and Keeton on Torts* § 4, at 25 (5th ed. 1984) ("When the decisions of the courts become known, and defendants realize that they may be held liable, there is of course a strong incentive to prevent the occurrence of the harm.").

In sum, we believe that by adopting the Settlement–First Formula we allow plaintiffs to benefit from their favorable settlements, we hold joint tortfeasors liable for their negligence, and we send an important message to society. We believe that this result is consistent with the general legislative goals behind the legislature's adoption

---

4. We recognize that the 70%/30% apportionment of fault was made in a universe consisting of Shelby and Action only, and that these percentages might have been different had General remained in the lawsuit. We do not believe, however, that this uncertainty undermines our fairness analysis.

of the comparative negligence provisions in UCATA.

### b. *Promoting Settlement*

We note initially that neither the Settlement–First Formula nor the Fault–First Formula is perfect in promoting settlement. *See, e.g.,* Annotation, *Comparative Fault: Calculation of Net Recovery by Applying Percentage of Plaintiff's Fault Before or After Subtracting Amount of Settlement by Less Than All Joint Tortfeasors,* 71 A.L.R. 4th 1108 (1989) (cases adopting both the Settlement–First Formula and the Fault–First Formula). The Settlement–First Formula, for example, encourages plaintiffs to settle with one/some defendants but not all defendants. This action is encouraged because a plaintiff who settles with one/some defendants but not all defendants has the opportunity to recover more damages than those to which the jury has determined he is entitled. In this case, for example, Shelby will recover a total of $370,000 under the Settlement–First Formula: $250,000 from General and $120,000 from Action. This amount is $175,000 more than the $195,000 in damages Action caused to Shelby.

Although the Settlement–First Formula is imperfect because it encourages plaintiffs to settle with one/some but not all defendants, the Fault–First Formula is even less perfect because it encourages defendants not to settle at all. The Fault–First Formula encourages this result because a defendant who refuses to settle may escape liability entirely if the plaintiff receives all to which the jury determines he is entitled from the settling defendant(s). In this case for example, Action would escape liability entirely under the Fault–First Formula because it would not be required to pay the $195,000 in damages that the jury determined Action caused to Shelby.

In addition, the Fault–First Formula encourages plaintiffs to forego settlement opportunities with less than all joint tortfeasors. If, as occurred in this case, the jury sets damages at or below the amount the plaintiff has already received from a settling defendant, the plaintiff has wasted his time and money proceeding to trial against the remaining defendant even if the jury assigns fault to the remaining defendant.

In sum, we candidly recognize that neither the Settlement–First Formula nor the Fault–First Formula is perfect in promoting settlement. On balance, however, we believe that the Settlement–First Formula, which encourages settlement (albeit only partial settlement), promotes settlement more than the Fault–First Formula, which actually *discourages* settlement. We believe that this result is consistent with the general legislative goals behind the legislature's adoption of the uniform contribution provisions in UCATA.

### B. *Does § 12–2504's Reduction Scheme Apply to Settlements Received from Defendants Who Have Been Sued Solely on a Strict Liability Theory?*

Shelby argues that because he sued General solely on a strict products liability theory, A.R.S. § 12–2504's reduction scheme does not apply to the settlement proceeds he received from General. Shelby derives support for this argument from A.R.S. § 12–2509(B), which provides that "contributory negligence ... is not a defense to a claim alleging strict liability in tort...." Although there is some logic to this argument, we reject it.

Section 12–2504 provides that "[i]f a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable *in tort* for the same injury, [then § 12–2504's reduction scheme applies.]" (Emphasis added.) We believe that the phrase "in tort," when construed according to its common and approved use, *see* A.R.S. § 1–213, includes all tort theories, including strict liability. *See Prosser and Keeton on Torts* § 98, at 692 (5th ed. 1984). Section 12–2504 therefore applies to this case. Accordingly, the amount Shelby received in settlement from General must be deducted from the amount of Shelby's damages as determined by the jury before reducing the then-reduced damages in proportion to Shelby's relative degree of fault.

8

### C. Costs

Because Shelby is the successful party under the Settlement–First Formula, he is entitled to costs as the "net winner." *See Ayala v. Olaiz*, 161 Ariz. 129, 131, 776 P.2d 807, 809 (App.1989) ("In cases involving various competing claims, counterclaims and setoffs all tried together, the successful party is the net winner.").

### Disposition

Although the court of appeals properly applied the Settlement–First Formula, we vacate its opinion. We remand this case to the trial court for entry of judgment in favor of Shelby for $120,000 plus costs.

FELDMAN, C.J., MOELLER, V.C.J., and CAMERON (Retired), and GORDON (Retired), JJ., concur.