832 P.2d 709

**Lavada G. HOOPER, individually, and Lavada G. Hooper, as Personal Representative for the Estate of Arthur B. Hooper, a Deceased man, Plaintiff–Appellee, Cross–Appellant,**

v.

**TRULY NOLEN OF AMERICA, INC., d/b/a Truly Nolen Exterminating, Inc., an Arizona corporation; Robert Hartley and Jane Doe Hartley, his wife; William Sample and Jane Doe Sample, his wife, Defendants–Appellants, Cross–Appellees.**

No. 1 CA–CV 90–0271.

Court of Appeals of Arizona,
Division 1, Department D.

June 16, 1992.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, P.A. by Charles J. Muchmore and Christopher Robbins, Pauline Sherry Fleminger, Phoenix, Nancy L. Schuster, Mesa, for plaintiff-appellee, cross appellant.

Sorenson & Moore by George R. Sorenson, John S. Schaper, Phoenix, for defendants-appellants, cross appellees.

## OPINION

GERBER, Judge.

### FACTS

Employees of Truly Nolen of America, Inc. (TNA) incorrectly and negligently applied chlordane at the residence of Lavada and Arthur Hooper by broadcast spraying it into the crawlspace. The Hoopers suffered acute chlordane poisoning and had to vacate their home. Both TNA and its insurer, Nationwide Insurance Company (Nationwide), promised to pay their living expenses for the duration of their evacuation. TNA's four attempts at decontamination failed. The home and its contents were damaged in the course of remedial efforts. The Hoopers alleged that Nationwide threatened to cut off payment of living expenses unless they agreed to move back into the house even though it was still contaminated.

The Hoopers filed a civil action against Truly Nolen of America, Inc., Robert Hartley, the technical director for TNA, and William Sample, the manager of the Phoenix office. The complaint alleged negligence, nuisance, racketeering, and intentional infliction of emotional distress by Nationwide related to its remedial efforts. A directed verdict was granted in favor of the individual defendants on all counts except negligence. A directed verdict was granted in favor of plaintiff against TNA on the nuisance and negligence claims and the jury was instructed to award compensatory and punitive damages on these counts. The instruction on punitive damages was given over objection by the corporate defendant. The jury was also instructed that the existence of an agency relationship between TNA and Nationwide was a question of fact and that the jury could only address the claim of intentional infliction of emotional distress if it found that Nationwide was the agent of TNA.

The jury found in favor of the individual defendants on the negligence charge. It found in favor of the plaintiff and against TNA for $260,000 in compensatory damages and $500,000 in punitive damages. The jury also found that TNA was not guilty of racketeering and that Nationwide was not the agent of TNA.

The individual defendants filed a statement of costs to which the plaintiff objected. The trial judge sustained the objection finding that plaintiff, "under the totality of the circumstances," was the prevailing party.

### ISSUES

Defendant TNA raises the following issues on appeal:

(1) Whether the trial court erred in instructing the jury on punitive damages;

(2) Whether the individual defendants were prevailing parties entitled to recover costs.

On cross-appeal, the plaintiff raised whether the court erred in failing to direct

a verdict that Nationwide was an agent of TNA as a matter of law.

## THE DIRECT APPEAL

The standard for the award of punitive damages is set forth in *Linthicum v. Nationwide*, 150 Ariz. 326, 330, 723 P.2d 675, 679 (1986):

> ... To recover punitive damages something more is required over and above the 'mere commission of a tort': ... The wrongdoer must be consciously aware of the wrongfulness of his conduct and yet continue to act in the same manner in deliberate contravention to the rights of the victim ... It is only when the wrongdoer should be consciously aware of the evil of his actions, of the spitefulness of his motives or that his conduct is so outrageous, oppressive, or intolerable in that it creates a substantial risk of tremendous harm to others that the evil mind required for the imposition of punitive damages may be found.

(Citation omitted.)

■ Punitive damages should be awarded only on clear and convincing evidence of the defendant's evil mind. *Id.* at 332, 723 P.2d at 680. Similarly, *Volz v. Coleman*, 155 Ariz. 567, 570, 748 P.2d 1191, 1194 (1987), holds that an evil mind may be shown by "either (1) evil actions; (2) spiteful motives; or (3) outrageous, oppressive or intolerable conduct ..." While TNA acknowledges its gross negligence and a failure to adequately supervise, it contends that the evidence does not establish such an evil mind. It argues that there was no clear and convincing evidence that TNA's employees were motivated by an evil disposition or spiteful motives amounting to an evil mind.

■ In *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 498, 733 P.2d 1073, 1079 (1987), the court suggested that the plaintiff may prove entitlement to punitive damages via a number of factors, no single one of which is exclusive. The primary consideration is the reprehensibility of conduct and severity of harm. Both can be shown by the duration of the misconduct, degree of the defendant's awareness of the harm or risk of harm and the defendant's deliberate continuation of the offending action. Attempts at concealment, defiance of law or prior orders and failure to remedy also support a punitive award. *Id.*, at 497, 733 P.2d at 1080.

■ Here TNA's contentions that its management was unaware of the application procedures used by its own crew strains credibility. TNA's training manual instructed its applicators to spray chlordane despite the fact that spraying violated the product's express labelling. Supervisors themselves acknowledged that spraying was improper. A manager actually participated in at least one illegal spraying. In a consent order entered by TNA in 1981, TNA agreed that it would no longer broadcast spray chlordane; this order was certainly known to management but withheld from employees. Each member of the Phoenix crew testified about improperly spraying all crawl spaces treated between 1981 and 1985, some 60 houses in all. Management did not provide its crews with appropriate tools to apply the chemical properly. The quantities of the chemical used and the amount of time spent in its application, as reflected on time sheets submitted to management, were inconsistent with proper application.

The manufacturer of chlordane placed the following warning on chlordane containers beginning in 1979:

> A committee of the National Academy of Sciences has stated that:

> There are no adequate data to show that these compounds are carcinogenic in humans, but because of their carcinogenicity in certain mouse strains and the extensive similarity of the carcinogenic action of chemicals in animals and in humans, the Committee concluded that chlordane, heptachlor, and/or their metabolites may be carcinogenic in humans.

Despite this warning, the branch manager, in 1983, addressed the concerns of a potential customer by sending a reassuring letter together with a pre–1979 label which contained warnings about toxicity from swallowing, skin contact and breathing va-

pors, but contained no mention of carcinogenicity. In a similar act of denial after spraying the Hooper residence, TNA management's first recourse was to propose using a deodorizer to mask the odor and conceal the harm.

While the TNA crew may not have acted with malicious purpose or spite, management's actual knowledge in these respects is so broad as to allow a jury to find TNA to be culpable. There is enough evidence to show TNA's long-standing knowledge of the harmful conduct of its employees to support the punitive damage award.

■ As to costs, Ariz.Rev.Stat.Ann. ("A.R.S.") § 12–341 makes it mandatory that "the successful party to a civil action ... recover from his adversary all costs expended or incurred therein ..." The trial court has discretion to determine the prevailing party. In *Schwartz v. Farmers Ins.*, 166 Ariz. 33, 38, 800 P.2d 20, 25 (1990), the court held that relief is "equally available to those who successfully defend an action as to those who successfully seek affirmative relief." This rationale applies to the individual defendants here who should have been awarded costs borne by them.

### THE CROSS–APPEAL

■ There is no authority in law or business custom for Hooper's contention that an insured, as a matter of law, is liable as a principal for the independent torts of its insurance carrier or adjuster, as though it were a principal directing its agent. An insurer retains control over the adjustment of claims in order to protect its own interests. *Rawlings v. Apodaca*, 151 Ariz. 149,

155 726 P.2d 565, 571 (1986); *City of Glendale v. Farmers Ins. Exchange*, 126 Ariz. 118, 121, 613 P.2d 278, 281 (1980). Though having power to suggest and eventually to consent to settlement, the insured usually has no legal right to direct specific actions of the carrier in processing or adjusting the claim. *Clearwater v. State Farm Mutual Automobile Ins. Co.*, 164 Ariz. 256, 260, 792 P.2d 719, 723 (1990); *Savard v. Selby*, 19 Ariz.App. 514, 518, 508 P.2d 773, 777 (App.1973). When the facts of control are disputed, as here, existence of an agency relationship is a factual issue to be determined by a jury, as it was here. *Corral v. Fidelity Bankers Life Ins. Co.*, 129 Ariz. 323, 326, 630 P.2d 1055, 1058 (App.1981). We find no error.

### CONCLUSION

We conclude that there was sufficient evidence to support the award of punitive damages. The trial court erred in its denial of costs to the individual defendants; we therefore remand for determination of the costs to be awarded them. We find no error in the trial court's refusal to direct a verdict that Nationwide was the agent of TNA as a matter of law.

TAYLOR, P.J., and EHRLICH, J., concur.