975 P.2d 114

**Garry and Donna BISHOP, husband and wife; Mathew Keith Bishop, an individual; and Chad Bishop, an individual, Plaintiffs–Appellees,**

v.

**Tom PECANIC, a minor; his parents Thomas L. Pecanic and Linda M. Pecanic, Husband and Wife; Corbin Harding, a minor; his parents Bradley K. Harding and Truma Harding, husband and wife, Defendants–Appellants.**

No. 1CA–CV 96–0615.

Court of Appeals of Arizona, Division 1, Department C.

July 28, 1998.

Review Granted March 23, 1999.

---

Fennemore Craig, P.C. By: Douglas C. Northup and: Vera E. Muñoz, Phoenix, Attorneys for Plaintiffs–Appellees.

Jones, Skelton & Hochuli By: William D. Holm and: Monica D. Beerling, Phoenix, Attorneys for Defendants–Appellants Pecanic.

Moore, Thomas & Lucas By: Diane M. Lucas, Phoenix, Attorneys for Defendants–Appellants Harding.

## OPINION

GARBARINO, Judge.

¶ 1 We hold that a defendant who is jointly and severally liable for an intentional tort with a co-tortfeasor is entitled to have an adverse judgment reduced by the amount of any settlement reached with the settling co-tortfeasor. Because the trial court interpreted Arizona's version of the Uniform Contribution Among Tortfeasors Act (UCATA) to the contrary, we reverse in part.

### FACTUAL AND PROCEDURAL HISTORY

¶ 2 The facts relevant to this appeal are undisputed. The appellees Mathew and Chad Bishop are brothers. Mathew attended high school at Scottsdale Christian Academy. The appellants Tom Pecanic and Corbin Harding were among a group of young men who confronted and attacked Mathew and Chad at the academy. They brutally beat Mathew and severely injured him. Mathew, Chad, and their parents, Garry and Donna

Bishop, brought this action against the attackers and their respective parents for the assault and battery of Mathew and for the intentional infliction of emotional distress on Chad. The parental liability was based on Arizona Revised Statutes Annotated (A.R.S.) section 12–661 (1992) (amended 1994).

¶ 3 Before trial, the Bishops settled their claims against three of the tortfeasors and their parents for a total of $57,500. The trial court dismissed the claims against these tortfeasors. The remaining claims against the Pecanics, the Hardings, and the McLaughlins went to trial.

¶ 4 The jury found against Chad Bishop on his intentional infliction of emotional distress claim, but found for Mathew Bishop on his battery claim. It awarded Mathew Bishop compensatory damages in the amount of $45,000 and punitive damages totalling $15,-000. The jury apportioned fault as follows:

| | |
|---|---:|
| Defendant Bruce McLaughlin | 20% |
| Defendant Corbin Harding | 15% |
| Defendant Tom Pecanic | 15% |
| Settling Tortfeasor Quaid Simek | 30% |
| Settling Tortfeasor Anthony Fleres | 10% |
| Settling Tortfeasor Sean Sutton | 5% |
| Settling Tortfeasor Scottsdale Christian Academy | 5% |

During trial, the court instructed the jury to determine whether some or all of the tortfeasors had acted in concert. The jury found that the tortfeasors, with the exception of Scottsdale Christian Academy, had acted in concert with their co-tortfeasors and the settling tortfeasors.

¶ 5 The court entered judgment on the jury's verdict against the Pecanics, the Hardings, and the McLaughlins, jointly and severally, for $45,000 in compensatory damages, and for proportionate shares of the punitive damages award. Because the court found that the Pecanics, the Hardings, and the McLaughlins were intentional tortfeasors, it ruled that they were not entitled to a set-off or credit for the $57,500 previously paid to the appellees by the settling parties. The court awarded costs to Mathew and Chad Bishop as the prevailing parties under A.R.S. section 12–341 (1992). The Pecanics and the Hardings appealed. We have jurisdiction pursuant to A.R.S. section 12–2101(B) (1994).

## ISSUES

I. Should the judgment against the appellants, who are jointly and severally liable for an intentional tort, be reduced under A.R.S. section 12–2504 (1994) by the amount of the appellees' settlement with the other joint tortfeasors?

II. Did the trial court correctly award costs to Chad Bishop pursuant to A.R.S. section 12–341?

## DISCUSSION

■ ¶ 6 Preliminarily, we should note that the appellees do not contend that any portion of the $57,500 settlement should be applied to the jury's award of punitive damages.

■ ¶ 7 The issue here requires us to examine Arizona's version of the UCATA, A.R.S. sections 12–2501 to 12–2509 (1994 & Supp.1997). Statutory interpretation is a question of law and is thus reviewed *de novo*. *See Parker v. Vanell*, 170 Ariz. 350, 351, 824 P.2d 746, 747 (1992).

I. *The "Single Recovery Rule" Applies to Tortfeasors Acting in Concert to Cause the Same Injury.*

¶ 8 The specific portion of the Arizona version of the UCATA to be examined is section 4:

**§ 12–2504. Release or covenant not to sue**

If a release or a covenant not to sue or not to enforce judgment is given in good faith to one of two or more persons liable in tort for the *same injury* or the same wrongful death both of the following apply:

1.  It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide, but it reduces the claim against the others to the extent of any amount stipulated by the release or the covenant or in the amount of the consideration paid for it, whichever is the greater.

2. It discharges the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor.

A.R.S. § 12–2504 (emphasis added).

¶ 9 The appellants urge us to accept the Single Recovery Rule, which mandates a deduction for sums paid by co-tortfeasors to settle a same-injury intentional tort claim. They argue that because they are "liable in tort for the same injury" with the tortfeasors who settled, the trial court should have reduced the judgment rendered against them by the amount of the settlement. They contend that to do otherwise would allow the appellees to recover damages twice for the same injury. To support their argument that A.R.S. section 12–2504 applies to intentional torts for the same injury, they point to the language used by our supreme court in *Shelby v. Action Scaffolding, Inc.*, 171 Ariz. 1, 827 P.2d 462 (1992),[1] when it held that the phrase "in tort" in section 12–2504 includes "all tort theories." *Id.* at 7, 827 P.2d at 468. The appellants conclude that A.R.S. section 12–2504 gives all tortfeasors, not just negligent tortfeasors, the right to credit for another joint tortfeasor's settlement.

¶ 10 The counter-argument is that when the UCATA is construed as a whole, it is clear that our legislature did not extend the benefits of section 12–2504 to the intentional tortfeasor and that a tortfeasor's settlement with a plaintiff should not benefit a fellow intentional tortfeasor by reducing the amount of the judgment. The appellees argue that, although "in tort" is not specifically defined in section 12–2504, A.R.S. section 12–2509(A) (1994) specifies the actions to which sections 12–2501 through 12–2504 apply, and intentional torts are not included:

A. The right to contribution under §§ 12–2501 through 12–2504 applies to all tortfeasors whose liability is based on negligence, strict liability in tort or any product liability action, as defined in § 12–681, including warranty.

The appellees contend that to construe section 12–2504 to apply to intentional torts as the appellants urge would be to render sec-

tion 12–2509(A) meaningless. *See State v. Moerman*, 182 Ariz. 255, 260, 895 P.2d 1018, 1023 (App.1994) (holding that the court must construe a statute as a whole, presuming the legislature did not include provisions that are "redundant, void, inert, trivial, superfluous, or contradictory").

¶ 11 As additional support for the argument that the appellants are not entitled to a credit because they are intentional tortfeasors, the appellees rely on A.R.S. section 12–2501(C) (1994), which provides, "[t]here is no right of contribution in favor of any tortfeasor who the trier of fact finds has intentionally, wilfully or wantonly caused or contributed to the injury or wrongful death." *Id.*

¶ 12 We are convinced that the appellees and the trial court incorrectly interpreted section 12–2504. The problem is that they fail to distinguish between the right to contribution between co-tortfeasors and a credit against a judgment. Contribution is the "[r]ight of one who has discharged a common liability to recover of another also liable, the aliquot portion which he ought to pay or bear." *Black's Law Dictionary* 328 (6th ed.1990); *see also Brown v. Brown*, 58 Ariz. 333, 336, 119 P.2d 938, 939 (1941). Contribution is concerned with the rights of co-tortfeasors *inter sese.* The focus in this case is on the relationship between the tortfeasors and the claimant. Section 12–2504 discusses the effects of a release and of a covenant not to sue those co-tortfeasors not parties to the release or covenant. It addresses the impact of a settlement on a plaintiff's claim against a nonsettling tortfeasor. Section 12–2509(A) addresses the relationship between co-tortfeasors.

¶ 13 The common law doctrine of joint and several liability provided that two or more tortfeasors causing an indivisible harm were each liable for the full amount of a judgment and were not entitled to contribution from each other. *See Bill Alexander Ford, Lincoln Mercury, Inc. v. Casa Ford, Inc.*, 187 Ariz. 616, 619, 931 P.2d 1126, 1129 (App.1996). Because it seemed unfair to

---

**1.** We note that *Shelby* has been superseded by statute. *See Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 508, 917 P.2d 222, 237 (1996).

force one tortfeasor to shoulder all of the damages, *see PAM Transp. v. Freightliner Corp.*, 182 Ariz. 132, 134, 893 P.2d 1295, 1297 (1995), the UCATA was enacted in Arizona to remedy the inequity. *See Bill Alexander Ford*, 187 Ariz. at 619, 931 P.2d at 1129; *Roland v. Bernstein*, 171 Ariz. 96, 97, 828 P.2d 1237, 1238 (App.1991).

¶ 14 However, the UCATA did not grant the intentional tortfeasor the right of contribution. *See* UCATA § 1(C); A.R.S. § 12–2501(C). The historic rationale for withholding the right of contribution to intentional tortfeasors was "that the court w[ould] not aid an intentional wrongdoer in a cause of action which is founded on his own wrong. In cases of concerted battery, for example, there appear[ed] to be little reason to shift any part of the liability to another." UCATA § 1, 12 Uniform Laws Annotated 195 cmt. (1996).

¶ 15 It is argued that no credit should be given in cases involving intentional tortfeasors as a matter of public policy. However, the UCATA was adopted to increase fairness for *both* plaintiffs and tortfeasors, and promote settlement of complex and multi-party litigation. *See Shelby*, 171 Ariz. at 6, 827 P.2d at 467 (citing Scot Butler, III & G. David Gage, *Comparative Negligence & Uniform Contribution: New Arizona Law*, 20 Ariz. B.J. 16, 17 (1984)).

¶ 16 Those against applying the right to the credit contained in section 12–2504 to intentional tortfeasors argue that it discourages settlement. A tortfeasor will recognize that, if he or she refuses to settle, he or she can proceed to trial and will, if unsuccessful, receive a credit for sums paid by the settling tortfeasors. A tortfeasor also may decide not to settle, believing that a jury award will be lower than the amount of the settlement with a settling tortfeasor. However, a tortfeasor could just as easily reason that the jury might return a larger verdict, even after deducting any settlement amounts. We believe section 12–2504(2) still provides an in-

centive for settlement by granting a discharge for "the tortfeasor to whom it is given from all liability for contribution to any other tortfeasor." *Id.* In addition, there is a very real possibility that a plaintiff seeking a joint and several recovery against a number of co-tortfeasors would never settle with all of them, opting to settle with some of the tortfeasors and proceed to trial against those with the greatest assets who could ultimately pay the entire jury award without benefit of a credit.

¶ 17 This case is distinguishable from *Roland* and *Neil v. Kavena*, 176 Ariz. 93, 859 P.2d 203 (App.1993). Both *Roland* and *Neil* recognize that section 12–2504 applies in situations where the parties were acting in concert and the recovery is joint and several. *See Roland*, 171 Ariz. at 97, 828 P.2d at 1238; *Neil*, 176 Ariz. at 95, 859 P.2d at 205; A.R.S. § 12–2506(D) (Supp.1997). In *Roland*, Division Two of this Court refused to credit the nonsettling tortfeasors for amounts paid in settlement by other tortfeasors, because there was no joint liability and section 12–2506(A) applied.[2] 171 Ariz. at 97, 828 P.2d at 1238. Division Two correctly concluded "that *§ 12–2504 does not apply because it was enacted as part of a statute permitting contribution between defendants liable for the entire amount of damages ....*" *Id.* (emphasis added).

¶ 18 *Neil* was also based on the fact that the defendants' liability was several, not joint:

> [W]ith several liability, contribution is essentially unnecessary, reflecting a legislative policy favoring an apportionment of liability in accord with each party's responsibility. *Despite the virtual elimination of joint and several liability, A.R.S. § 12–2504, which addresses contribution claims for non-settling tortfeasors, was not amended, presumably because joint and several liability still applies in a few instances.*

**2.** Section 12–2506(A) provides in part:
    **A.** In an action for personal injury, property damage or wrongful death, the liability of each defendant for damages is several only and is not joint, except as otherwise provided in this section. Each defendant is liable only for the amount of damages allocated to that defendant in direct proportion to that defendant's percentage of fault....

176 Ariz. at 95, 859 P.2d at 205 (citations omitted) (emphasis added). The jury in this case found that the appellants had acted in concert, unlike the parties in *Roland* and *Neil.* Thus, joint and several liability properly applies here. *See* A.R.S. § 12–2506(D)(1).

¶ 19 Few cases address the UCATA and the intentional tortfeasor. In the only reported opinion, the Ohio Supreme Court held that an intentional tortfeasor is not entitled to a deduction from the judgment for the amount the plaintiffs received in settlement from co-tortfeasors in exchange for the plaintiff's covenant not to sue. *See Jones v. VIP Development Co.,* 15 Ohio St.3d 90, 472 N.E.2d 1046, 1053 (1984).[3] We are aware that our decision is counter to that of the Ohio Supreme Court in *Jones. See id.* 472 N.E.2d at 1053–54. Interpreting Ohio's version of the UCATA, which is essentially identical to Arizona's, the Ohio Supreme Court held that a tortfeasor is not entitled a credit for the amount the plaintiff accepted from co-tortfeasors in exchange for a covenant not to sue:

> [Revised Code § ] 2307.31(A) provides that "[t]here is no right of contribution in favor of any tortfeasor who has intentionally caused or intentionally contributed to * * * [an] injury or wrongful death."[ [4]] Although R.C. 2307.32(F)[ [5]] allows for a reduction of a judgment by the amount paid by another tortfeasor in exchange for a covenant not to sue, we are persuaded that the legislature did not intend that such reduction may benefit an intentional wrongdoer. It would be nonsensical to hold that while an intentional tortfeasor may not profit by means of contribution from a fellow wrongdoer, he may nevertheless secure a reduction in the judgment against him by the sum paid to plaintiff in exchange for a covenant not to sue. We refuse to presume that the legislature intended this incongruous result.

*Id.* at 1053–54 (footnote omitted) (citation omitted). We disagree. The two rules are grounded on competing policies. In *Jones,* the court denied a credit because of its reluctance to aid the wrongdoers in adjusting their losses. *See id.* We find the better policy is embodied in the Single Recovery Rule, which validates a jury's verdict and disallows a double recovery.

■ ¶ 20 In addition, we would be ignoring the unambiguous language of sections 12–2504 and 12–2506 to adopt the holding in *Jones.* In interpreting a statute, we must first look to its language. *See Janson on Behalf of Janson v. Christensen,* 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991). If the language is clear, we must apply the statute. *See id.*[6]

¶ 21 Finally, the appellees· argue that their position is directly supported by our recent decision in *Herstam v. Deloitte & Touche, LLP,* 186 Ariz. 110, 919 P.2d 1381 (App.1996). We disagree. In *Herstam,* the plaintiff sued several tortfeasors alleging an intentional tort committed in concert. *See id.* at 114, 919 P.2d at 1385. The plaintiff then settled with less than all of the tortfeasors. *See id.* The settlement agreements imposed a mutual ban and permanent injunction on all contribution claims between the nonsettling tortfeasors and the settling tortfeasors. *See id.* Plaintiffs further agreed to relinquish the right to hold a nonsettling tortfeasor jointly and severally liable with the settling tortfeasors. *See id.* The plaintiff filed amended complaints against the nonsettling tortfeasors, specifically renouncing the intention to seek joint liability between settling and non-settling parties. *See id.* The trial court approved the settlements and ruled that the nonsettling tortfeasors would not be " 'entitled to a *pro tanto* judgment reduction credit for any amount paid by or collected from any member' of the settling groups." *Id.* On appeal, the *Herstam* court

---

**3.** We note that *Jones* has been superseded by statute. *See Pratt v. National Distillers & Chemical Corp.,* 853 F.2d 1329, 1335 (6th Cir.1988).

**4.** This statute corresponds to A.R.S. section 12–2501(C).

**5.** This statute corresponds to A.R.S. section 12–2504.

**6.** We also note that in enacting our statute, our legislature did not adopt section 9 of the UCATA, which would have instructed us to construe it in conformance with other states' interpretations.

reasoned that the agreements were equitable to the nonsettling tortfeasors because

> [i]f the [plaintiff] were successful in a trial involving all of these parties, he could place the entire burden of the loss on a party who was only slightly at fault. A.R.S. § 12–2506(D)(1). By limiting the liability of the nonsettling parties to their proportionate degrees of fault, however, the settlement agreements attempt to more fairly distribute the liability for [plaintiff]'s losses, without any possibility of a collusive settlement in favor of the settling parties.

*Id.* at 116, 919 P.2d at 1387 (footnote omitted).

¶ 22 Unlike the plaintiff in *Herstam,* the appellees did not waive joint and several liability in this case. Each of the appellants was faced with paying the entire judgment despite having caused only a portion of the injuries. *See Bill Alexander Ford,* 187 Ariz. at 619, 931 P.2d at 1129. In *Herstam,* section 12–2504 protected the nonsettling tortfeasors. *See* 186 Ariz. at 117, 919 P.2d at 1388.

> We acknowledge that giving a nonsettling, *jointly*-liable tortfeasor a credit for the settling party's payment for the release of liability protects against collusion and unfairness. Such unfairness might result if a settlement is intentionally disproportionate to the settling party's degree of fault; but here, no nonsettling party will be liable for any settling party's fault.

*Id. Herstam* favors the appellants' position more than it does the appellees'.

¶ 23 The appellees' contention that applying section 12–2504 "punishes" the innocent plaintiff by reducing his recovery and thus rewarding the guilty tortfeasor does have merit. However, the flip side of the coin has greater merit. The jury established the appellees' damages at $45,000. They recovered $57,000 by settlement. In *Neil,* a comparative negligence case, we held that the judgment against one tortfeasor would not be reduced by the amount of the settlement with another tortfeasor. *See* 176 Ariz. at 96, 859 P.2d at 207. We rejected the appellant's argument that this allowed the plaintiff a double recovery:

> The single-recovery rule, which historically permitted defendants a credit for amounts paid in settlement by other defendants to prevent a plaintiff's excess recovery, was adopted when courts could not allocate liability among defendants; a settling defendant could only offer to pay for a plaintiff's entire, indivisible injury. Now, the respective shares of the liability of multiple defendants can be determined. *See* .A.R.S. § 12–2506. Each defendant may settle his portion and such settlement neither affects the amount of harm caused by the remaining defendants nor the liability. The settling defendant simply has paid an agreed amount to "buy his peace" and the non-settling defendant has no right to complain that the settling defendant paid too much.

176 Ariz. at 97, 859 P.2d at 207 (citations omitted). We must keep in mind that *Neil* was not a joint and several liability case, and each party was liable only for its proportionate share of the plaintiff's damages. Any settlement the plaintiff reached with a particular tortfeasor did not affect her recovery against the other tortfeasors. However, this is a joint and several liability case and, in keeping with the Single Recovery Rule, the plaintiff's recovery against one tortfeasor does reduce the judgment against the other tortfeasors.

¶ 24 Because the appellants were "liable in tort for the same injury" as were those who settled, they were entitled to the benefits of A.R.S. section 12–2504. The trial court erred in ruling to the contrary.

## II. *The Trial Court Abused its Discretion by Awarding Costs to Chad Bishop.*

¶ 25 The appellants challenge the trial court's finding that Chad Bishop was a successful party for purposes of recovering costs under A.R.S. section 12–341.

¶ 26 The determination of who is a successful party for purposes of awarding costs under A.R.S. section 12–341 is left to the discretion of the trial court. *See Hooper v. Truly Nolen of America, Inc.,* 171 Ariz. 692, 695, 832 P.2d 709, 712 (App.1992). Litigation involving multiple parties and multiple claims makes that determination more complicated. *See Drozda v. McComas,* 181 Ariz.

82, 85 n. 2, 887 P.2d 612, 615 n. 2 (App. 1994).

¶ 27 The appellants argue that the trial court should have examined the success or failure of each party separately, and that it abused its discretion by determining that Chad, against whom the jury had returned a defense verdict and who had recovered nothing on his claim, was a successful party. In *Hooper,* the plaintiffs brought suit against a corporation and two of its employees. *See* 171 Ariz. at 693, 832 P.2d at 710. They prevailed against the corporate defendants but were unsuccessful as to the individual defendants. *See id.* The trial court determined that the plaintiffs were the successful parties "under the totality of the circumstances," *id.,* and awarded the plaintiffs their costs against all of the defendants. *See id.* On appeal, this Court held simply that costs may be awarded to any party who successfully defends an action. *See id.* at 695, 832 P.2d at 712. The appellants argue that *Hooper* precludes a party from being awarded costs based on what they call "derivative success":

> [A] party does not enjoy derivative success simply because he is lined up on the same side as a prevailing party.... The lesson from *Hooper* is that a party cannot obtain failure or success vicariously from his alliance with other parties that happen to be on the same side of the lawsuit.

¶ 28 The court abused its discretion by awarding costs to Chad, an adult plaintiff who was not a prevailing party.

### CONCLUSION

¶ 29 The judgment is reversed, and the cause is remanded to the superior court for entry of judgment consistent with this opinion, giving the appellants credit for those amounts paid by the co-tortfeasors in settlement of their claims. The award of costs to Chad is reversed, and the trial court is directed to award the costs incurred in defending against Chad's claims.

JEFFERSON L. LANKFORD, Presiding Judge, and E.G. NOYES, Jr., Judge, concur.